Jim NELSON, et al., Appellants,

v.

INTERNATIONAL HARVESTER
CORPORATION, Respondent.

No. C6–86–646.

Court of Appeals of Minnesota.

Oct. 21, 1986.

Review Denied Dec. 12, 1986.

James L. Fetterly, Fetterly & Purdy, Minneapolis, Stephen G. Lickteig, Cold Spring, for appellants.

George W. Soule, Cynthia J. Atsatt, Bowman & Brooke, Minneapolis, for respondent.

Heard, considered, and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

WOZNIAK, Judge.

Plaintiffs are the insurers of farmers who purchased combines manufactured by defendant International Harvester, Inc. Plaintiffs sued defendant, alleging breach of warranty, strict liability, and negligence, to recover damages sustained when the combines caught fire. The district court, Stearns County, granted defendant's motions for summary judgment and dismissal for failure to state a claim. The trial court ruled that the warranty claims were barred by the four-year U.C.C. statute of limitations and that, pursuant to *Superwood v. Siempelkamp*, 311 N.W.2d 159 (Minn. 1981), plaintiffs' strict liability and negligence claims were barred. Plaintiffs appeal from the judgment entered for defendant. We affirm.

## FACTS

Defendant is a manufacturer of farm equipment. From the early 1960's until 1978, defendant manufactured the two models of self-propelled combines which gave rise to this litigation. Many of the insured farmers bought the combines second-hand from implement dealers or other farmers.

The combines caught fire and burned. Plaintiffs allege the fires were caused by latent defects in the fuel systems which caused gasoline to spill onto the hot engine blocks. Each of the fires occurred more than four years after defendant originally delivered the combine. None of the fires caused personal injury or damage to property other than the combine.

The plaintiffs are township mutual fire insurance companies which paid the insured farmers for the losses. The plaintiffs are now subrogated to the rights of their insureds.

## ISSUES

1. Are plaintiffs' claims in strict liability and negligence barred by the *Superwood* rule?

2. Are plaintiffs' warranty claims barred by the Uniform Commercial Code statute of limitations?

## ANALYSIS

1. In *Superwood v. Siempelkamp Corp.*, 311 N.W.2d 159 (Minn.1981), the supreme court held that economic losses arising out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under tort theories of negligence or strict liability. *Id.* at 162. The court held that such losses are recoverable exclusively through the warranty remedies of the U.C.C. *Id.*

The plaintiff in *Superwood* sued for damages resulting from a defective press which failed after twenty-one years of use. Plaintiff sought recovery in negligence and strict liability for the cost of repairing the press, lost profits, and increased costs of production.

The court held that the plaintiff could not recover in tort, stating:

The U.C.C. clarifies the rights and remedies of parties to commercial transactions. For example, there are specific provisions covering warranties, *see* Minn. Stat. § 336.2–314 (1980); warranty disclaimers, *see* Minn.Stat. § 336.2–316 (1980); liability limitations, *see* Minn.Stat. § 336.2–719 (1980); and notice provisions, *see* Minn.Stat. § 336.2–607 (1980). The recognition of tort actions in the instant case would create a theory of redress not envisioned by the legislature when it enacted the U.C.C. Furthermore, tort theories of recovery would be totally unrestrained by legislative liability limitations, warranty disclaimers and notice provisions. *To allow tort liability in commercial transactions would totally emasculate these provisions of the U.C.C. Clearly, the legislature did not intend for tort law to circumvent the statutory scheme of the U.C.C.*

*Id.* (emphasis added).

Here, plaintiffs assert that the *Superwood* rule is inapplicable for two reasons: first, because the rule should not apply to

cases in which the loss was caused by a "sudden and calamitous event," and second, because the purchases of these combines by the insureds were not "commercial transactions" within the purview of the U.C.C. Both arguments fail.

a. The "sudden and calamitous event" exception, which has been adopted in some jurisdictions, stems from the policy consideration "whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim." *Pennsylvania Sand Glass Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1173 (3rd Cir. 1981); *see also Minneapolis Society of Fine Arts v. Parker-Klein Associates Architects*, 354 N.W.2d 816, 821 (Minn.1984). Resolution of the issue often turns on whether the loss resulted from internal deterioration or breakdown of the product or failure to live up to expectations, or from "sudden and calamitous" damages arising from a violent or hazardous accident. *See Sanco, Inc. v. Ford Motor Co.*, 579 F.Supp. 893 (S.D.Ind.1984); *aff'd* 771 F.2d 1081 (7th Cir.1985).

The Minnesota Supreme Court rejected application of this exception in *S.J. Groves & Sons Co. v. Aerospatiale Helicopter Corp.*, 374 N.W.2d 431 (Minn.1985). In *Groves*, a highway contractor sued a helicopter manufacturer for losses sustained when the helicopter crashed. The pilot was killed and a passenger was injured in the crash, but the plaintiff in *Groves* sought recovery only for economic losses arising from the damage to the helicopter itself, not from the personal injury. The plaintiff argued that it should be allowed to recover in tort for the economic loss, notwithstanding the *Superwood* rule, because the loss resulted from a "sudden and calamitous occurrence." The supreme court rejected this argument, stating:

> This "sudden and calamitous" distinction itself causes us some concern. "Calamitous" is a nebulous word, incapable of precise definition. Determining whether damage resulted from a "sudden and calamitous occurrence" as op-

posed to a "qualitative" defect is certain to present numerous problems. Use of such a distinction, moreover, is arbitrary. Almost every "calamitous" occurrence resulted from the type of internal breakage or gradual deterioration that could just as well have become a "qualitative" defect; often all that distinguishes the two is the time of occurrence, not the type of defect.

374 N.W.2d at 435.

The court concluded, however, that:

> We do not by this decision, or the foregoing observations, wholly foreclose future consideration of the proposed distinction if presented in other, more compelling circumstances than presented in this case.

*Id.* It cannot be argued that the fires here, which injured no one, were more "sudden and calamitous" than the fatal helicopter crash in *Groves*. Plaintiffs argue, however, that what the supreme court really meant by "more compelling circumstances" was physical calamity coupled with unequal bargaining power of the parties. While the supreme court's decision in *Groves* also turned in part on the issue of equality of bargaining power, plaintiffs' bootstrapping of the two concepts finds no support in the *Groves* opinion.

b. Plaintiffs also argue that the *Superwood* rule should not apply here because there were no commercial transactions between them and defendant. *Superwood* precludes tort recovery only of economic losses arising out of commercial transactions. *Superwood*, 311 N.W.2d at 162.

The phrase "commercial transaction" appears in section 1–102 of the U.C.C.: "Underlying purposes and policies of this chapter are (a) to simplify, clarify, and modernize the law governing commercial transactions * * *." Minn.Stat. § 336.1–102 (1984). Article 2 of the U.C.C. applies to transactions in goods, Minn.Stat. § 336.2–102, and is not limited to non-consumer transactions. By implication, then, consumer transactions are "commercial transactions" as that phrase is used in section 1–102.

The supreme court in *Superwood*, however, used the phrase "commercial transactions" in a more narrow sense. The *Superwood* decision expressly excludes consumers' actions:

> Limiting the application of strict products liability to consumers' actions or actions involving personal injury will allow the U.C.C. to satisfy the needs of the commercial sector and still protect the legitimate expectations of consumers.

*Superwood*, 311 N.W.2d at 162.

In *Groves*, the court conditioned the application of *Superwood* on the possession of some bargaining power by the plaintiff:

> When the plaintiff, like Groves, is a commercial entity endowed with bargaining power, any considerations of fairness and deterrence that might in other situations lead us to allow recovery in tort for these types of damages have no effect.

374 N.W.2d at 434. The *Groves* court did not, as plaintiffs argue, require "substantially equivalent" bargaining power for *Superwood* to apply.

■ Thus, a "commercial transaction" within the meaning of *Superwood* is a nonconsumer transaction in which each party possesses *some* bargaining power. Plaintiffs argue that the existence of a commercial transaction is an issue of material fact which precludes entry of summary judgment. This argument fails.

■ In this case, the insured farmers are independent businessmen. The combines were purchased for use in income-generating activities. Both of the parties in each transaction had some bargaining power. These were not consumer transactions. They were "commercial transactions" within the meaning of *Superwood*.

There is no need to remand for findings of fact regarding bargaining power. We conclude as a matter of law that there was no bargaining power disparity between the parties. *See Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 926 (Minn.1982).

■ Plaintiffs also argue that *Superwood* applies only to "parties" to a commercial transaction and that, because defendant, as manufacturer, was not a "party" to each sales transaction, *Superwood* does not apply. This argument ignores the rationale of *Superwood*. The *Superwood* court held that tort recoveries of economic losses are barred because the U.C.C. provides a warranty remedy in such cases. Minnesota has adopted the most liberal privity requirement available in the U.C.C., *see* Minn.Stat. § 336.2–318, and there is no question that the farmers here could have brought a warranty action against the manufacturer. To argue that *Superwood* should not apply and they should be able to bring tort actions as well on the grounds that they were not in privity with the manufacturer is inconsistent with legislative intent as well as with the reasoning of the *Superwood* decision.

■ 2. Plaintiffs argue that their warranty claims are not barred by the four-year U.C.C. statute of limitations. Section 2–725 of the U.C.C. sets forth the limitations period for warranty actions:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. * * *
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made*, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Minn.Stat. § 336.2–725 (1984) (emphasis added). In this case, none of the actions was commenced within four years of delivery.

The warranty at issue here is the implied warranty of merchantability provided by U.C.C. § 2–314.[1] Plaintiffs argue that the

---

1. The U.C.C.'s implied warranty of merchanta-    bility provides:

implied warranties in this case explicitly extended to future performance and that the causes of action accrued upon discovery of the breach as provided in subdivision (2) of section 2–725.

This argument has been rejected by every court which has considered it, usually on the grounds that the words "implied" and "explicit" are contradictory and it would be illogical to hold that an implied warranty can explicitly extend to future performance. *See, e.g., Clark v. DeLaval Separator Corp.*, 639 F.2d 1320, 1325 (5th Cir.1981) (an implied warranty by its very nature cannot explicitly extend to future performance); *General Motors Corp. v. Tate*, 257 Ark. 347, 516 S.W.2d 602, 606 (1974); *Everhart v. Rich's, Inc.*, 128 Ga. App. 319, 196 S.E.2d 475 (1973); *Tomes v. Chrysler Corp.*, 377 N.E.2d 224 (Ill.Ct.App. 1978); *Wilson v. Massey-Ferguson, Inc.*, 315 N.E.2d 580 (Ill.Ct.App.1974); *see also* J. White & R. Summers, *Uniform Commercial Code* § 11–9 at 419–20 (1980).

Plaintiffs argue that, because the combines here were expected to last for many seasons, the applicable implied warranties carry an explicit warranty for future performance. As discussed above, however, an implied warranty by its very nature cannot contain such an explicit extension. Furthermore, none of the products in the above-cited cases would be expected to perform only at delivery time. There is nothing unique about a combine which would require an exception to the established rule.

## DECISION

The judgment of the trial court is affirmed.

(1) Unless excluded or modified, * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *.

(2) Goods to be merchantable must be at least such as

* * * * * *

(c) are fit for the ordinary purposes for which such goods are used * * *.
Minn.Stat. § 336.2–314 (1984).