James DUBBE, et al., Appellants,

v.

A.O. SMITH HARVESTORE PRODUCTS, INC., Minnesota Valley Breeders Association, d.b.a. Valley Harvestore Systems, Respondents.

No. C0-86-1016.

Court of Appeals of Minnesota.

Jan. 27, 1987.

Review Denied March 13, 1987.

Ronald H. Schneider, Schneider & Kallestad, Willmar, John L. Neveaux, Jr., Wayzata, Paul Roland Rambow, Minnetonka, for appellants.

Frederick W. Morris, Best & Flanagan, Minneapolis, for respondent A.O. Smith Harvestore Products, Inc.

J.P. Dosland, Dosland, Dosland & Nordhougen, Moorhead, for respondent Minnesota Valley Breeders Association, d.b.a. Valley Harvestore Systems.

Considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

The Dubbes appeal from a judgment in favor of A.O. Smith Harvestore Products, Inc. (Harvestore), the manufacturer, and Minnesota Valley Breeders Association (MVBA), the dealer, of "Harvestore" silos. The jury found that both respondents misrepresented their product, but that the misrepresentations were not a direct cause of appellants' damages. The action was based on the failure of two Harvestore storage units to operate as advertised, as well as on the resulting damage to appellants' dairy operation. Partial summary judgment was granted on the negligence and strict product liability claims. Prior to trial, the court dismissed the breach of warranty claims. The Dubbes allege that the breach of warranty claims should not

have been dismissed and that the trial court's failure to award damages was not consistent with the jury's special verdict. We affirm.

## FACTS

In 1981 James Dubbe purchased his father's 160–acre dairy farm. The barn, milking facilities, and feed storage capacity were expanded in 1981. In July 1981 Dubbe purchased a Harvestore silo and unloader for $24,800 and in October 1981 a hay silo and unloader for $64,800. Both purchases were made through the Minnesota Valley Breeders Association, a local cooperative.

Harvestore advertised that their structures and storage methods limited oxygen contact with feed, resulting in higher quality feed, healthier animals and cost-savings. Appellant claims that use of the Harvestore units, costing nearly triple the price of conventional storage, resulted in moldy and heat-damaged feed which adversely affected his herd's health and milk production. Appellant alleges Harvestore technology actually enhances oxygen contact and is inferior to common concrete silos.

Appellant presented expert testimony that the breather bags, the heart of Harvestore's oxygen limiting technology, were faulty in that they, in conjunction with the unloader, actually pumped oxygen into the silos. Harvestore's testimony was that their methods were "state of the art" and did limit oxygen contact with the feed. Appellant testified to problems with herd health and milk production and that the herd's decline coincided with Harvestore's arrival.

Harvestore blamed the herd's milk production decline on Dubbe's inexperience and inability to effectively manage a large herd. The parties disputed whether the silage was stored at the proper moisture levels for effective utilization of Harvestore technology.

The jury returned a special verdict which found that Harvestore and MVBA did "fraudulently misrepresent the feed storage capabilities of the Harvestore units,"

but did not find the misrepresentation to be a direct cause of Dubbes' harm.

## ISSUES

1. Did the trial court err in dismissing the Dubbes' claims for breach of express and implied warranties?

2. Was the special verdict inconsistent with the trial court's judgment?

## ANALYSIS

The trial court dismissed appellants' breach of warranty claims prior to trial. It is clear from the record that the trial court considered matters outside the pleadings, *i.e.*, the bill of sale and deposition of James Dubbe. The motion to dismiss was therefore converted into a motion for summary judgment. *McAllister v. Independent School District No. 306*, 276 Minn. 549, 551, 149 N.W.2d 81, 83 (1967). Accordingly, we will view the evidence in the most favorable light for the appellant. *Carney v. Central Life Assurance Co.*, 366 N.W.2d 351, 353 (Minn.Ct.App.1985). In evaluating summary judgment on the breach of warranty claims, we must determine:

(1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Greyhound Lines, Inc. v. First State Bank*, 366 N.W.2d 354, 356 (Minn.Ct.App. 1985), *pet. for rev. denied* (June 27, 1985) (quoting *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979)).

This case involves a sale of goods; consequently, the Uniform Commercial Code, as enacted into Minnesota law, must be applied. Minn.Stat. § 336.2–316 (1984) covers the exclusion or modification of warranties. Subsection (2) sets out the requirements for a valid disclaimer.

Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it *the language must mention merchantability and in case of a writing must be conspicuous,* and to exclude or modify any implied warranty of fitness the exclusion

must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(Emphasis added.)

The Harvestore purchase agreements were similar. The front of the agreement was simply a bill of sale with space for the order to be listed. The back carried the terms of the sale. One provision was listed as the "SECOND DISCLAIMER" which read:

NO OTHER WARRANTY, EITHER EXPRESS OR IMPLIED AND INCLUDING A WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE HAS BEEN OR WILL BE MADE BY OR IN BEHALF OF THE MANUFACTURER OR THE SELLER OR BY OPERATION OF LAW WITH RESPECT TO THE EQUIPMENT AND ACCESSORIES OR THEIR INSTALLATION, USE, OPERATION, REPLACEMENT OR REPAIR. NEITHER THE MANUFACTURER NOR THE SELLER SHALL BE LIABLE BY VIRTUE OF THIS WARRANTY, OR OTHERWISE, FOR ANY SPECIAL OR CONSEQUENTIAL LOSS OR DAMAGE (INCLUDING BUT NOT LIMITED TO THOSE RESULTING FROM THE CONDITION OR QUALITY OF ANY CROP OR MATERIAL STORED IN THE STRUCTURE) RESULTING FROM THE USE OR LOSS OF THE USE OF EQUIPMENT OR ACCESSORIES. THE MANUFACTURER MAKES NO WARRANTY WITH RESPECT TO THE ERECTION OR INSTALLATION OF THE EQUIPMENT, ACCESSORIES, OR RELATED EQUIPMENT BY THE HARVESTORE DEALER, WHO IS AN INDEPENDENT CONTRACTOR, OR BY ANY OTHER INDEPENDENT CONTRACTOR, IRRESPECTIVE OF ANY STATUTE. THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE, IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL OTHER REMEDIES, STATUTORY OR OTHERWISE.

The "terms and conditions" section also contained a provision on "acknowledgment and reliance."

I HAVE READ AND UNDERSTOOD THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER INCLUDING THE WARRANTIES, DISCLAIMERS AND TERMS AND CONDITIONS HEREIN GIVEN TO ME, EITHER BY THE MANUFACTURER OR THE SELLER. I RELY ON NO OTHER PROMISES OR CONDITIONS AND REGARD THAT AS REASONABLE BECAUSE THESE ARE FULLY ACCEPTABLE TO ME.

Dubbe signed both agreements following this provision. He also initialed the signature box on the first agreement, but he did not initial the second agreement.

Exculpatory clauses, while not favored by the law, may be valid between private parties. *See Walton v. Fujita Tourist Enterprises Co.*, 380 N.W.2d 198, 201 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. March 21, 1986). Moreover,

[a] clause exonerating a party from liability will be strictly construed against the benefited party. If the clause is ambiguous in scope it will not be enforced.

*Id.*

The purchase agreement contains a capitalized, large print disclaimer, identified as such. Merchantability is mentioned in the very first sentence of the disclaimer. Since Dubbe signed the back sheet, and stated he read the section, or at least a part of it, he was aware of the section's implications. The disclaimer clause in the purchase agreement was valid.

■ Appellant alleges the disclaimer clause is unconscionable and constitutes a contract of adhesion. Parties to such contracts are commonly of unequal strength and business knowledge. In this case, both parties are informed business entities. Dubbe cannot claim to have been victimized by Harvestore and MVBA since, as a farmer, he had prior experience in commercial

dealings. *See Nelson v. International Harvester Corp.*, 394 N.W.2d 578, 581 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Dec. 12, 1986).

The purchase agreements, coupled with James Dubbe's statement that he read, initialed, and signed the agreements, remove any issue of material fact as to the disclaimers and the trial court did not err in ruling Minn.Stat. § 336.2–316 was satisfied. The disclaimer was bargained for between commercial parties and is valid.

The special verdict form contained nine questions. The jury found that MVBA and Harvestore fraudulently misrepresented the feed storing capabilities of Harvestore units and that Dubbe reasonably relied on the misrepresentation. However, the jury also found that the misrepresentations were not the direct cause of Dubbe's damages. The jury was required, in order to complete the verdict form, to answer the following damage question: "What sum of money will fairly compensate plaintiffs for damages sustained *as a result of the defendant's false representations*?" (Emphasis added.) Appellant claims that since the jury answered the damage question with a total damage figure of $74,200, they intended that Dubbe receive this amount, notwithstanding their answers that misrepresentations by MVBA and Harvestore were not a direct cause of Dubbe's damage.

 The trial court attempted to harmonize the inconsistent answers of the jury. The trial court possesses broad discretion in this area. *Strauss v. Waseca Village Bowl*, 378 N.W.2d 131, 133 (Minn. Ct.App.1985). The applicable standard is "whether the answers can be reconciled in any reasonable manner consistent with its fair inferences." *Id.* In its denial of appellant's post-trial motions, the trial court said in its accompanying memorandum:

> On the special verdict form the jury stated that defendants' actions did not directly cause plaintiff's injuries. The jury may have reasoned a superseding cause caused plaintiffs' injuries. The jury's determination of causation is not such that the record compels a conclusion, as a

matter of law, that defendants' conduct was the direct cause of plaintiffs' injuries.

Also, since the verdict form required damages to be ascertained even if direct cause was not attributed to the misrepresentations, the jury may have answered the question because they felt they had to do so. The trial court's harmonization of the jury's seemingly contradictory answers appear to be reasonable and within its discretion.

### DECISION

The trial court did not err in dismissing the breach of warranty claims since the disclaimer complied with the U.C.C. requirements and was included in a signed purchase agreement. The harmonization of the jury's inconsistent answers on the special verdict form was reasonable and did not constitute an abuse of discretion.

Affirmed.