TCF BANK & SAVINGS, F.A., Appellant,

v.

MARSHALL TRUSS SYSTEMS, INC., defendant and third-party plaintiff, Respondent,

v.

Thomas J. OSTERBERG, et al., Third-party defendants.

No. C4–90–1850.

Court of Appeals of Minnesota.

Feb. 19, 1991.

Review Denied April 29, 1991.

James T. Swenson, Minneapolis, for appellant.

Daniel J. Roth, Scott B. Lundquist, Minneapolis, for respondent.

* Wm. J. Nierengarten, retired judge of the district court, acting as judge of the Court of Appeals by

Considered and decided by KALITOWSKI, P.J., and SCHUMACHER and NIERENGARTEN,* JJ.

## OPINION

NIERENGARTEN, Acting Judge.

Appellant brought an action seeking damages based on respondent's negligence and breach of common law implied warranties in the manufacture and sale of wooden trusses used in the construction of appellant's building. Respondent moved for summary judgment. Appellant moved to amend the complaint to include certain contribution and indemnity claims assigned to it. The trial court granted summary judgment for respondent but failed to rule on the motion to amend the complaint. We affirm the summary judgment on the original complaint, but remand for a ruling on the motion to amend the complaint.

## FACTS

During 1979–80, Pipestone Federal Savings and Loan Association (Pipestone) built a bank with a canopy-covered drive-through facility in Marshall, Minnesota. Appellant TCF Bank & Savings acquired the facility in May 1982 from Pipestone. The general contractor for the 1979–80 project was Robert L. Carr Co. (general contractor). Respondent Marshall Truss Systems, Inc. was the subcontractor who supplied the structural wood trusses that supported the drive-through canopy. On July 7, 1988, the drive-through canopy suddenly collapsed, causing over $100,000 in damage to appellant's property.

In January 1989, appellant initiated this complaint against respondent based on respondent's negligence and breach of common law implied warranties. Appellant sought damages associated with the redesign and repair of the drive-through facility.

Appellant also commenced an action against Thomas J. Osterberg and Ronald D. Halgerson, d/b/a Group II Architects

appointment pursuant to Minn. Const. art. VI, § 2.

(Group II), and Bakke, Kopp, Ballou & McFarlin, Inc. (Bakke), alleging defective design of the roof canopy. Respondent interposed a third party complaint seeking indemnity and/or contribution from third party defendants Group II, Bakke and Hydro Air Engineering, Inc. based upon their participation in the design of the bank's roof and/or truss system. Subsequent to the service of respondent's third party complaint, third party defendants Group II and Bakke each reached a settlement agreement with appellant.

At the same time it commenced a civil action against respondent and others, appellant also began an arbitration proceeding against the general contractor as required by the contract between Pipestone, its predecessor, and the general contractor. As part of a settlement reached during the arbitration proceedings, the general contractor assigned to appellant its claims of contribution and indemnity against respondent.

On March 19, 1990, appellant moved to amend its complaint to include those contribution and indemnity claims. On the same day, respondent moved for summary judgment on appellant's claim of negligence and breach of warranty. Respondent did not respond to appellant's motion to amend. The trial court did not rule on the motion to amend the complaint. On May 17, 1990, it granted respondent's motion for summary judgment.

## ISSUES

1. Did the trial court err when it concluded appellant's breach of warranty claims were time-barred by Minn.Stat. § 336.2-725 (1988)?

2. Did the trial court err in concluding, as a matter of law, that appellant's negligence claims were barred under the *Superwood* doctrine as economic losses from a commercial transaction?

3. Did the trial court commit prejudicial error by failing to rule on appellant's motion to amend its complaint?

## ANALYSIS

### I.

On review of summary judgment, the appellate court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The trial court may not decide factual issues on a motion for summary judgment; its sole function is to determine whether fact issues exist. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). The evidence must be viewed in the light most favorable to the nonmoving party. *Id.*

Article 2 of the Uniform Commercial Code (U.C.C.) has been adopted by Minnesota and codified at Minn.Stat. §§ 336.2-101 to 336.2-725 (1988). Article 2 defines goods as:

> [A]ll things (including specially manufactured goods) which are movable at the time of identification to the contract for sale.

Minn.Stat. § 336.2-105(1).

If a contract involves both the sale of goods and the provision of services, Minnesota courts have adopted the "predominant factor" test to determine whether the U.C.C. should apply. *Valley Farmers' Elevator v. Lindsay Bros. Co.*, 398 N.W.2d 553, 556 (Minn.1987), *overruled on other grounds, Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn.1990). Under the test, the trial court must determine whether the contract is primarily for the sale of goods or to provide a service. Appellant argues there is a genuine issue of material fact as to whether goods or services predominated in the contract between respondent and the general contractor and summary judgment should not have been granted. It should be noted, however, that "[t]he question as to the classification of a hybrid contract is generally one of law". *Valley Farmers' Elevator*, 398 N.W.2d at 556.

The trial court record indicates respondent manufactured and assembled the wood trusses from lumber and then deliv-

ered them to the building site for installation under subcontract to the general contractor. The code is explicit that article 2 covers "specially manufactured goods". Minn.Stat. § 336.2–105(1). The trusses fall within this category since they were specially made for the building project. There is no indication in the record that respondent performed any service other than delivery of the goods. The trial court correctly concluded the subcontract between respondent and the general contractor was predominantly a contract for the sale of goods.

■ Appellant contends that even if the original transaction was a sale of goods, appellant was not a party to that contract. Instead, it is a third party who has the benefit of the common law remedies in tort for breach of warranty.

Under section 336.2–318, a seller's express or implied warranty "extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty". "Person" includes organizations. Minn.Stat. § 336.1–201(30). Pipestone, as owner of the building, could reasonably be expected to be affected by the sale of the trusses to the contractor who built the building, thus it was covered by the U.C.C. warranty provisions. Appellant, upon purchase of the building from Pipestone, assumed Pipestone's rights under the warranty provisions. *See Nelson v. International Harvester Corp.*, 394 N.W.2d 578, 581 (Minn.App.1986), *pet. for rev. denied* (Minn. Dec. 12, 1986) (farmers who bought tractors secondhand from the original purchasers could have brought a warranty action against the original manufacturer under the U.C.C.).

■ The U.C.C. provides that any action for breach of any contract, including breach of warranty claims, "must be commenced within four years after the cause of action has accrued." Minn.Stat. § 336.2–725(1).

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A *breach of warranty* occurs when tender of delivery is made.

Minn.Stat. § 336.2–725(2) (emphasis added).

Appellant's cause of action accrued when respondent tendered delivery of the wooden trusses to the Pipestone building project in 1979–80. It did not commence this action until January 24, 1989, nine years after tender of delivery. Under section 336.2–725, this action is clearly time-barred.

■ Appellant argues the trial court applied the incorrect statute of limitations because subcontractors on construction projects who provide materials are covered by the statute of limitations in Minn.Stat. § 541.051 (1988), not Minn.Stat. § 336.2–725. Section 541.051, subdivision 1(a) provides:

Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or vrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, *materials,* or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury or, in the case of an action for contribution or indemnity, accrual of the cause of action, nor, in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

(Emphasis added).

Appellant claims that the trusses were materials used in an improvement to real property and thus the statute of limitation did not begin to run until discovery of the injury at the time of the collapse of the bank building in July 1988. However, the Minnesota Supreme Court, in *Valley Farmers' Elevator,* held that when there is a sale of goods used eventually in the construction of an improvement to real property, the U.C.C. statute of limitations applies.

*Valley Farmers' Elevator,* 398 N.W.2d at 556–57.

Appellant correctly points out that after the court's decision in *Valley Farmers' Elevator,* involving breach of a contract for the sale of a grain storage structure which was used as an improvement to real property, the legislature in 1989 amended Minn. Stat. § 336.2–725 to read as follows:

> This section does not alter the law on tolling of the statute of limitations * * *. Nor does this section apply to actions for the breach of any contract for sale of a grain storage structure that is an improvement to real property, which actions shall be subject only to the statute of limitations set forth in section 541.051.

Minn.Stat. § 336.2–725(4) (Supp.1989).

Appellant believes this amendment evidences the legislature's intent that actions involving improvement to real property be governed by section 541.051. However, the amended section specifically exempts only grain storage structures from coverage under the U.C.C. If the legislature had intended a sweeping renunciation of the U.C.C. statute of limitations in the construction material context, it is unlikely it would have amended the section in such a limited manner.

The trial court, recognizing the limited nature of this exemption, correctly held section 541.051 to be inapplicable to the breach of warranty claims advanced by appellant. It did not err in its conclusion that appellant's breach of warranty claims were time-barred by section 336.2–725 because the action was not commenced within four years after the tender of delivery of the wooden trusses.

## II.

 Appellant also seeks negligence damages for the manufacture of the wooden trusses. In *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159 (Minn. 1981) the Minnesota Supreme Court originally held that

> economic losses that arise out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the

tort theories of negligence or strict products liability.

*Id.* at 162. Instead, such claims are to be decided under the warranty provisions in the U.C.C. *Id.*

Recently, the Minnesota Supreme Court, overruling *Superwood* as it relates to damage to other property, expanded the exclusivity of the U.C.C. remedies to commercial transactions involving such damage.

> [I]n our judgment the Uniform Commercial Code must control exclusively with respect to damages in a commercial transaction which involves property damage only, and any statement or implication to the contrary in *Superwood* and its progeny is hereby expressly overruled. If the Code is to have any efficacy, parties engaged in commercial activity must be able to depend with certainty on the exclusivity of the remedies provided by the Code in the event of a breach of their negotiated agreemen'..

*Hapka,* 458 N.W.2d at 688.

Economic loss under the *Superwood* doctrine is defined as

> [loss] resulting from the failure of the product to perform to the level expected by the buyer and commonly has been measured by the cost of repairing or replacing the product and the consequent loss of profits, or by the diminution in value of the product because it does not work for the general purposes for which it was manufactured and sold.

*Minneapolis Soc'y of Fine Arts v. Parker-Klein Assocs. Architects,* 354 N.W.2d 816, 820–21 (Minn.1984), *overruled on other grounds, Hapka,* 458 N.W.2d at 688. Appellant's claim of negligence based on "property damage, repair costs and related losses" arises from the failure of the wooden trusses to adequately support the bank canopy. As such, the losses fall within the definition of economic loss.

Appellant argues neither Pipestone nor itself had any bargaining power in the sales transaction that took place between respondent and the general contractor and therefore its remedies should not be limited by *Superwood.*

In *Nelson*, we addressed the question of *Superwood*'s applicability to goods purchased from the original owners. There, plaintiffs purchased combines secondhand from implement dealers or other farmers. In their negligence actions against the manufacturer of the combines, plaintiffs argued that *Superwood* applied only to "parties" to a commercial transaction. *Nelson*, 394 N.W.2d at 581. Because the defendant manufacturer was not a party to each of the secondhand sales transactions, the plaintiffs argued that *Superwood* did not apply. *Id.* We disagreed.

> Minnesota has adopted the most liberal privity requirement available in the U.C.C., *see* Minn.Stat. § 336.2–318, and there is no question that the farmers here could have brought a warranty action against the manufacturer. To argue that *Superwood* should not apply and they should be able to bring tort actions as well on the grounds that they were not in privity with the manufacturer is inconsistent with legislative intent as well as with the reasoning of the *Superwood* decision.

*Id.*

In this case, appellant was in privity with the general contractor under Minn.Stat. § 336.2–318 and had the right to bring a warranty action against respondent. Under *Superwood*, the U.C.C. provides the exclusive remedy. The trial court did not err when it granted summary judgment in favor of respondent on appellant's tort claim of negligence.

### III.

■ On the same day respondent moved for summary judgment, appellant moved to amend its complaint to include "a count regarding the claims of Robert L. Carr Company against Marshall Truss Systems, Inc. that have been assigned to TCF" under the settlement between the general contractor and appellant.

Each party in their memos in support of or opposition to summary judgment briefly addressed the issue of the assigned claims. The trial court's memo accompanying the order granting summary judgment indicated it was aware of the assigned claims, but the trial court did not rule on the motion to amend the complaint.

■ The motion to amend was made after respondent filed its answer to the original complaint. Thus, the pleadings could be amended only by leave of the trial court or by written consent of the adverse party. Permitting or refusing to amend a pleading is within the sound discretion of the trial court. *Warrick v. Giron*, 290 N.W.2d 166, 169 (Minn.1980). The court, however, shall give such consent freely when justice so requires. Minn.R.Civ.P. 15.01. The trial court must rule on the motion before we can determine whether it is acting within its discretion. Such a failure to rule was prejudicial error necessitating remand.

### DECISION

We affirm the trial court's grant of summary judgment in favor of respondent *as to the claims asserted in appellant's original complaint.* However, because the trial court failed to rule on appellant's motion to amend the complaint, the grant of summary judgment cannot be considered a final and complete resolution of the issues before the trial court. Therefore, we remand to the trial court for a ruling on the motion to amend the complaint.

Affirmed in part, remanded in part.