# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1015

_____

Steven A. Menz; Jennifer Menz,      *
     *
     Appellants,      *
     *
     *    Appeal from the United States
     v.      *    District Court for the
     *    Eastern District of Missouri.
New Holland North America, Inc.;      *
Ford Motor Company; Westendorf      *
Manufacturing Co., Inc.,      *
     *
     Appellees.      *

_____

Submitted: June 14, 2007
Filed: November 14, 2007

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Steven Menz (Menz) and Jennifer Menz (Mrs. Menz) appeal the district court's[1] grant of summary judgment in favor of defendants New Holland North America, Inc. (New Holland), Ford Motor Company (Ford), and Westendorf Manufacturing Co., Inc. (Westendorf). We affirm.

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

## I.    BACKGROUND

### A.    Factual Background

This products liability case arises from a tractor roll-over accident that occurred on October 3, 2002. On that day, Menz was moving dirt using his 1976 Ford model 6600 tractor (tractor), which was equipped with a front-end loader (loader) manufactured by Westendorf. Menz planned to use the tractor and loader to move dirt at the bottom of a levee near a pond adjacent to Menz's Missouri farm to decrease the slope of the terrain.

Menz began dumping his first load of dirt while driving at the bottom of and parallel to the levee, on a slight incline sloping downward toward a "washout."[2] To the left of Menz's path was the washout. To Menz's right was the uphill side of the levee. The loader was three-fourths full to completely full of dirt. Before Menz began raising the loader bucket, it was about one or two feet off the ground. When Menz was approximately ten feet from the spot where he intended to unload the dirt, he began raising the loader bucket further off the ground. As Menz approached the unloading spot and raised the loader bucket, the tractor's left front tire skidded into the washout. The tractor then rolled over onto its left side. Menz tried to jump out of the way but failed; ultimately, Menz was pinned by the tractor face down in the dirt. Menz suffered several injuries, including the amputation of his left arm.

Menz purchased the tractor from a previous owner in about 1992, and acquired the loader in approximately 1994 or 1996. Menz estimated he had used the tractor with its attached loader for "hundreds of hours." In the years before the accident, Menz had not experienced any problems with the tractor or loader, and the tractor had not previously leaned or tipped over while in use. Menz's tractor was not equipped

---

[2]This "washout" had resulted from an earlier intentional cutting of the levee to drain the pond. Menz testified the washout was twelve to eighteen inches deep and was wide enough for his tractor to fit in while upside down.

with a roll-over protection system (ROPS), a device capable of being installed on a tractor to aid the operator in the event of a roll-over.

### B.    Procedural Background

Menz and Mrs. Menz (collectively, the plaintiffs) filed suit against New Holland,[3] Ford, and Westendorf (collectively, the defendants), asserting product liability claims under strict liability and negligence theories as well as a claim for loss of consortium.  Ford filed a motion for sanctions, seeking to have the case dismissed due to spoliation of evidence.[4]  The district court granted the motion and dismissed the plaintiffs' case with prejudice, finding: (1) Menz spoliated evidence by making post-accident repairs to the tractor, selling the loader, and completing the levee work; and (2) such spoliation prejudiced the defendants.  On appeal, we reversed and remanded for a determination by the district court on whether Menz acted in bad faith.  Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1007 (8th Cir. 2006).

On remand, rather than pursuing the issue of bad faith, the defendants moved for summary judgment and also moved to exclude the opinions of the plaintiffs' liability expert, J.D. Ryan (Ryan), under Federal Rule of Evidence 702 and under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  The district court granted summary judgment in the defendants' favor on all claims, and granted in part the defendants' motion to exclude Ryan's expert opinion.  See Menz v. New Holland N. Am., Inc. (New Holland), 460 F. Supp. 2d 1058 (E.D. Mo. 2006) (granting New Holland's and Ford's motion for summary judgment); Menz v. New Holland N.

---

[3]New Holland owns certain assets of Ford's tractor division.

[4]After the accident, Menz repaired the tractor by replacing the back fenders, seat, steering wheel, muffler, and top hood assembly.  He sold the loader to another individual, who subsequently sold the loader to someone else.  Sometime following the accident, Menz had the pond and the cut in the levee refilled.  In the summer and fall of 2003, Menz regraded the slope of the levee where the accident occurred.

Am., Inc. (Westendorf), 460 F. Supp. 2d 1050 (E.D. Mo. 2006) (granting Westendorf's motion for summary judgment).

The plaintiffs appeal, challenging the dismissal of their: (1) strict liability failure to warn claims against the defendants, (2) strict liability claim for design defect against New Holland and Ford, (3) negligence claims against the defendants, and (4) loss of consortium claim against the defendants.

## II. DISCUSSION

### A. Standard of Review

We review de novo a district court's order granting summary judgment. See Ehlis v. Shire Richwood, Inc., 367 F.3d 1013, 1015 (8th Cir. 2004). Summary judgment is proper if, after viewing all the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1033 (8th Cir. 2007). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). We may affirm a district court's grant of summary judgment on any basis supported by the record. See Tenge v. Phillips Modern Ag. Co., 446 F.3d 903, 906 (8th Cir. 2006). Missouri substantive law governs in this diversity action. See Pro Serv. Auto., L.L.C. v. Lenan Corp., 469 F.3d 1210, 1213 (8th Cir. 2006).

### B. Strict Liability Failure to Warn Claim Against New Holland and Ford

Menz first argues the district court erred in granting summary judgment to New Holland and Ford on Menz's strict liability failure to warn claim. To prove causation in a failure to warn case, Menz must demonstrate (1) his injuries were caused by a product for which there was no warning, and (2) a warning would have altered his

behavior.  See Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo. banc 1992). Summary judgment is proper if either element is not satisfied.  See Mothershead v. Greenbriar Country Club, Inc., 994 S.W.2d 80, 89 (Mo. Ct. App. 1999).  The district court found Menz failed to satisfy the second causation element because Menz's expert witness Ryan testified "there were no warnings [New Holland and Ford] could have given Menz that would have altered his conduct at the time of the accident." New Holland, 460 F. Supp. 2d at 1066.  During Ryan's deposition, he testified:

> Q:    Is there information that you believe Steve Menz lacked that would have changed the outcome of this accident?
> A:    No . . . .
> Q:    So, there isn't any information that you think [Menz] needed to be warned about–
> A:    No.
> Q:    –that would have changed the outcome.
> A:    No. . . . You can't do safety with warnings.  It's Number 3 or Number 4, depending on the standard.  So forget warnings.  Fix it.

On appeal, Menz argues the district court erroneously determined (1) Missouri law requires expert testimony to prove causation for his failure to warn claim, (2) Menz was not entitled to a presumption that he would have heeded a warning because he had knowledge of the tractor's specific dangers, and (3) Menz could not contradict his expert witness's testimony by submitting his own affidavit regarding the effect of a warning.

Missouri law does not necessarily require expert testimony in a strict products liability case.  See Pro. Serv. Auto., 469 F.3d at 1214 (citing Tune v. Synergy Gas Corp., 883 S.W.2d 10, 14 (Mo. banc 1994)).  Such testimony is necessary, however, "where the lay jury [does] not possess the experience or knowledge of the subject matter sufficient to enable them to reach an intelligent opinion without help."  Id. (internal quotation omitted); see, e.g., Housman v. Fiddyment, 421 S.W.2d 284, 289

(Mo. banc 1967) ("When jurors, for want of experience or knowledge of the subject under inquiry, are incapable of reaching an intelligent opinion without outside aid[,] the courts out of necessity admit the testimony of experts in the field."). Because the determination of whether expert testimony is necessary rests in the first instance in the trial court's sound discretion, we review that decision for abuse of discretion. See Housman, 421 S.W.2d at 289.

The necessity of expert testimony in a failure to warn case turns on the complexity of the subject matter. See Bryant v. Laiko Int'l Co., No. 1:05CV00161, 2006 WL 2788520, at *10 (E.D. Mo. Sept. 26, 2006) (recognizing "Missouri courts have always allowed, and often required expert testimony" on the question of failure to warn). Here, Menz's strict liability claim alleges the defendants failed to warn him of the tractor's inherent instability and propensity to turn over on relatively level ground, and of the added danger of using a loader. Menz argues "[r]esolution of these issues does not require analysis of any complex machinery." We disagree. Contrary to Menz's assertion, the products at issue in this case are fairly technical and complex, and are not the type of machinery commonly utilized by the typical lay juror. See Pro. Serv. Auto., 469 F.3d at 1214 (requiring expert testimony on causation for the plaintiff's strict products liability claim given the complexities involved in the operation of the equipment at issue). The district court did not abuse its discretion in concluding a lay jury would lack the experience and knowledge necessary to determine causation on Menz's warnings claim without the aid of expert testimony. Cf. Cole v. Goodyear Tire & Rubber Co., 967 S.W.2d 176, 185 (Mo. Ct. App. 1998) (holding the trial court did not abuse its discretion in failure to warn case by admitting testimony of the plaintiff's expert witness, and noting "[w]arnings and how people react to warnings are arguably subjects about which persons having no particular training are incapable of forming accurate opinions"). As noted previously, Menz's expert, Ryan, testified unequivocally there was no information or warning the defendants could have given Menz that would have altered Menz's conduct at the time of the accident. Thus,

summary judgment in New Holland's and Ford's favor is proper on Menz's strict liability failure to warn claim.

In reaching this conclusion, we note that even if expert testimony were not required, Menz failed to provide any other evidence demonstrating a warning would have altered his behavior. Although Missouri law recognizes a rebuttable presumption that a warning will be heeded, this presumption arises only when there is sufficient evidence from which a jury could find the plaintiff did not already know of the specific danger involved. See Arnold, 834 S.W.2d at 194. Menz fails to meet his burden to demonstrate that lack of knowledge. See id. At the time of the accident, Menz had been operating tractors for nearly thirty years, and he had been using this particular tractor for approximately ten years before the accident. During his deposition, Menz conceded he (1) was "aware that any tractor will tip over if it's driven across a steep enough hillside"; (2) knew from "common sense" he should not drive his tractor any higher on the levee while carrying something in the loader, due to the risk of roll-over; (3) had developed a "general appreciation" commencing sometime between ages 12 and 20 that "the steeper the incline[,] the more you should avoid it and the more caution you should exercise"; and (4) was instructed before the accident to keep the tractor's loader bucket low to the ground when hauling dirt to avoid getting into trouble.[5]

Menz attacks the significance and relevancy of these admissions, arguing that at the time of the accident he was operating the tractor on "relatively level ground" and was unaware the tractor could turn over on a slight slope. However, Menz's repeated attempts to characterize the plane on which he was driving as "relatively level ground"

_____

[5]Menz testified during his deposition that after filling the loader bucket with dirt and while driving to the spot where Menz intended to unload the dirt, the loader was about one or two feet above the ground. Despite being warned to keep the loader bucket low to the ground, as he neared his intended unloading spot, Menz began raising the loader bucket higher off the ground.

is incongruous with his deposition testimony, during which Menz stated that immediately before the accident, he had been driving on a "slight downward incline" or "slightly sloped ground," and his tractor was not on perfectly level ground and was tilting downward to its left toward the washout. For these reasons, Menz is not entitled to a presumption that a warning would have been heeded and would have altered his behavior.

Finally, we reject Menz's attempt to contradict Ryan's testimony by submitting his own affidavit regarding Menz's knowledge at the time of the accident and the effect of a warning.[6] It is well settled under Missouri law "that a party is bound by the uncontradicted testimony of his own witness." Silberstein v. Berwald, 460 S.W.2d 707, 710 (Mo. 1970); see, e.g., Erdman v. Condaire, Inc., 97 S.W.3d 85, 88 (Mo. Ct. App. 2002). Even if Menz were not bound by Ryan's testimony, Menz cannot create a genuine issue of material fact by attempting to contradict his own previous testimony. See, e.g., Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-66 (8th Cir. 1983). Although Menz's affidavit alleged he would not have used the tractor-loader combination had he known of the dangers involved, Menz previously testified no particular warning or piece of information would have changed his behavior. Thus, the district court properly refused to consider Menz's affidavit.

Because Menz failed to show a warning would have altered his behavior, the district court properly granted summary judgment in favor of New Holland and Ford on Menz's strict liability failure to warn claim.

---

[6]Menz's affidavit stated he (1) had no idea his tractor was inherently unstable and had a propensity to roll over, (2) was unaware this propensity to roll over would be increased by using a front-end loader, and (3) would not have used the tractor-loader combination to perform the regrading work had he known of these factors.

### C.    Strict Liability Failure to Warn Claim Against Westendorf

Menz's strict liability claim against Westendorf is based solely on Westendorf's alleged failure to warn about the propensity of the loader to cause tractors to become dangerously unstable and susceptible of tipping over under normal use conditions. In granting summary judgment in Westendorf's favor, the district court found Menz (1) failed to present expert testimony on the causation element of his failure to warn claim, (2) was not entitled to a presumption that he would have heeded an absent warning, and (3) could not counter Ryan's expert opinion by submitting his own affidavit. Westendorf, 460 F. Supp. 2d at 1055-56, 1056 n.9-10.

For the same reasons discussed with regard to Menz's failure to warn claim against New Holland and Ford, we similarly affirm the grant of summary judgment on Menz's claim against Westendorf. First, the district court did not abuse its discretion in requiring Menz to present expert testimony given the complexities of the product at issue, and given a lay jury's probable lack of the experience and knowledge necessary to determine causation. See Pro. Serv. Auto., 469 F.3d at 1214; Cole, 967 S.W.2d at 185. Menz failed to present such evidence, because Ryan clearly testified there was no warning that would have changed the outcome of the accident. Second, Menz is not entitled to a presumption that he would have heeded a warning and altered his activities. See Arnold, 834 S.W.2d at 194 (holding presumption arises only when there is sufficient evidence from which a jury could find the plaintiff did not already know of the specific danger involved). Finally, Menz cannot contradict his expert witness's opinion by submitting his own affidavit regarding Menz's knowledge at the time of the accident and the effect of a warning. See Silberstein, 460 S.W.2d at 710. Because Menz failed to make a submissible case with regard to the causation element of his failure to warn claim, summary judgment in Westendorf's favor was proper.

**D.    Strict Liability Defective Design Claim Against New Holland and Ford**

Under Missouri law, to prevail in a products liability action under a theory of defective design, Menz must demonstrate (1) the defendants sold the product in the course of their business, (2) the product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, (3) the product was used in a manner reasonably anticipated, and (4) Menz was injured as a direct result of such defective condition as existed when the product was sold.  Waggoner v. Mercedes Benz of N. Am., Inc., 879 S.W.2d 692, 694 (Mo. Ct. App. 1994).  The district court found Menz failed to show he was injured as a direct result of a defective condition that existed when the tractor was sold.  New Holland, 460 F. Supp. 2d at 1062.  The district court excluded Ryan's expert opinion that the accident was caused by the tractor's defective nature, noting Ryan was unable to verify several "critical components of the accident."[7]  Id. at 1063 n.8.  On appeal, Menz argues the district court erred by finding Ryan's expert testimony speculative and therefore inadmissible, and attacks the district court's reliance on several "critical components" as a basis for excluding Ryan's causation opinion.

---

[7]These "critical components" cited by the district court included the height of the loader, the angle of the loader bucket, the weight of the dirt in the loader, the speed of the tractor, the angle of the turn, the slope of the ground, the depth of the ditch, the soil conditions, the nature of the terrain, any braking applied, and the condition of the tractor's wheels and hydraulics.

Under Federal Rule of Evidence 702,[8] a qualified expert witness's opinion is admissible if, among other things, "it is based upon sufficient facts or data." The proponent of the expert testimony bears the burden to prove its admissibility. See Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001). We review the district court's exclusion of such evidence for abuse of discretion. See Smith v. Cangieter, 462 F.3d 920, 923 (8th Cir. 2006) (citing Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142-43 (1997)).

We find no abuse of discretion in the present case. In opining the tractor's defective nature caused the accident, Ryan did not believe it was necessary to reconstruct the events preceding the accident; rather, he repeatedly testified the only way to make the tractor safe was by installing a ROPS. Ryan failed to offer any theory, supported by or based on sufficient facts or data, regarding how to design out the tractor's alleged inherent instability. Considering the deficiencies at the core of Ryan's opinion as well as his inability (or his apparent indifference to the need) to reconstruct the accident scientifically, Ryan's conclusion the tractor's instability caused Menz's accident was mere speculation and conjecture. See J.B. Hunt Transport, Inc. v. Gen. Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001). As the Supreme Court has recognized:

---

[8]Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

> [N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

<u>Gen. Elec. Co.</u>, 522 U.S. at 146. The district court did not abuse its discretion in excluding Ryan's expert opinion, leaving Menz without the requisite expert testimony to establish causation on his defective design claim. We therefore affirm the grant of summary judgment in favor of New Holland and Ford.

### E.     Negligence Claims

In <u>Peitzmeier v. Hennessy Industries, Inc.</u>, 97 F.3d 293, 296 n.2 (8th Cir. 1996), we recognized negligence claims "have a higher threshold of proof than strict liability claims." Relying on this principle and on Menz's failure to present triable issues of fact on any of his strict liability claims, the district court granted summary judgment in favor of the defendants on Menz's negligence claims. <u>New Holland</u>, 460 F. Supp. 2d at 1067; <u>Westendorf</u>, 460 F. Supp. 2d at 1057.

Menz does not dispute the district court's recognition of the higher threshold of proof for negligence claims. Instead, Menz argues the district court's dismissal of the negligence claims are based solely on the court's erroneous dismissal of Menz's strict liability claims. Menz offers no additional reasoning to support his claim of error. Therefore, because summary judgment was proper on Menz's strict liability claims against the defendants, Menz's negligence claims necessarily fail as well.

### F.     Loss of Consortium

Finally, the plaintiffs agree that Mrs. Menz's claim for loss of consortium is wholly derivative and thus rises or falls with the success of the underlying claims of Menz, her injured spouse. <u>See</u> <u>Wright v. Barr</u>, 62 S.W.3d 509, 537 (Mo. Ct. App.

2001).  Because summary judgment was proper on all of Menz's claims, the loss of consortium claim likewise must fail.

## III.    CONCLUSION

We affirm the judgment of the district court.

_____