# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3225

_____

Highway Sales, Inc.;
Donald Oren,

          Appellants,

    v.

Blue Bird Corporation;
Thermo Leasing Corporation,
doing business as
Shorewood RV Center,

          Appellees.

*
*
*
*
*  Appeal from the United States
*  District Court for the
*  District of Minnesota.
*
*
*
*
*
*
*

_____

Submitted: April 15, 2008
Filed: March 11, 2009

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

     Donald Oren (Oren) and Highway Sales, Inc. (Highway Sales) (collectively, plaintiffs), asserted claims against Blue Bird Corporation (Blue Bird) for (1) breach of express and implied warranties; (2) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301-2312; (3) violation of Minnesota's Lemon Law, Minn. Stat.

§ 325F.665; and (4) revocation of acceptance under Minn. Stat. § 336.2-608. Plaintiffs also asserted a claim for revocation of acceptance against Thermo Leasing Corporation d/b/a Shorewood RV Center (Shorewood RV). The district court granted Blue Bird's and Shorewood RV's (collectively, defendants) motion for summary judgment on all of plaintiffs' claims. Plaintiffs appeal. We affirm in part and reverse in part.

## I. BACKGROUND

Plaintiffs' claims arose from their purchase of a defective recreational vehicle (RV) manufactured by Blue Bird. On July 31, 2003, Highway Sales purchased, for Oren's use,[1] a Blue Bird Wanderlodge M380 RV from Shorewood RV, a Blue Bird authorized dealer. The purchase price was $337,244.

In the months following the sale, Oren discovered numerous defects, including failures of the RV's electrical system, batteries, seals, slides, gauges, compressor, monitor, and lighting. Oren returned the RV to Shorewood RV for repairs on a number of occasions, and Shorewood RV attempted to remedy the RV's various defects. Despite Shorewood RV's efforts, Oren continued experiencing problems with the RV.

On July 2, 2004, Oren delivered the RV to Shorewood RV's lot, giving the keys to Shorewood RV and removing his belongings. Oren informed Anthony Santarsiero (Santarsiero), a Shorewood RV employee, that Oren was returning the RV as of that day. Santarsiero gave Oren the name of Blue Bird's CEO and told Oren to call or write the CEO a letter to try to resolve the problem. On July 8, 2004, Oren wrote a letter to Blue Bird's CEO asking him to authorize repurchase of the RV at its original cost. Oren copied Santarsiero on the letter. The letter stated, in part:

---

[1]Highway Sales is a truck dealership owned by Oren.

. . . After almost a year of continued problems with this motor home, I have come to three conclusions. First, the Model M380 was released before it had been properly designed, tested, and debugged. Second, Shorewood RV is a terrific dealer for you, but even they could not overcome the inherent problems in the M380. Third, I have run out of patience, confidence, and trust that the problems can be fixed in a reasonable time, and I request that you return my purchase price.

. . . On July 2, 2004, after the engine batteries once again died, I removed all my personal belongings and returned the coach to the dealer. This was the final event—the last straw. . . . I spoke with Anthony Santarsiero and told him I was returning the coach as of that day. . . .

Suffice it to say that I am out of patience, and that both of our lives will be made easier if you will simply authorize a repurchase of the coach at its original cost. This coach simply needs to be permanently recalled until major corrections are made.

. . . I'm not interested in further retrofits, patches, or excuses. I will never take this coach back.

Neither Blue Bird nor Shorewood RV refunded plaintiffs' purchase price. Instead, on July 31, 2004, a Blue Bird technician performed a major electrical retrofit on the RV. Despite this repair, the batteries failed again on August 12, 2004. Additional repairs were completed on August 19, 2004, while the RV was in Shorewood RV's possession.

On September 7, 2004, Blue Bird's Director of Customer Service formally rejected Oren's request for a refund, asserting, "[y]our electrical issue on your M380 has been repaired. . . .We do not refund purchases or buy units back. We are committed to working with our Dealers and Customers to resolve any service needs that may occur. I know you have had some battery issues with your unit, but I am confident that these issues have been resolved. You have a reliable unit that should give you the service and performance it is designed for."

On September 14, 2004, Oren and Shorewood RV signed a Consignment Agreement, giving Shorewood RV the exclusive right to sell the RV. Before putting the RV on Shorewood RV's sales lot, additional repairs were completed on September 28, 2004, and October 4, 2004.

Despite the Consignment Agreement, Oren continued his efforts to obtain a refund. On October 27, 2004, Oren again wrote to Blue Bird, demanding a refund. Oren wrote another letter to Blue Bird on November 2, 2004, this time notifying Blue Bird he considered the RV to be a "lemon" under Minnesota's Lemon Law. On November 5, 2004, Blue Bird replied to Oren's October 27, 2004 letter. Blue Bird refused to provide a refund, declaring "Blue Bird stands behind this [RV which is] a reliable unit and will give you the service and performance for which it is designed." Blue Bird then apologized for any inconvenience Oren incurred while the RV was being repaired and offered to "send a Wanderlodge factory representative to Shorewood to provide additional owner training and a systems check" of the RV. On November 17, 2004, Oren traveled to Shorewood RV to check the status of the RV. Oren found the RV would not start because the batteries were once again dead. On November 19, 2004, Blue Bird's attorney responded to Oren's November 2, 2004 letter stating, "Blue Bird and its distributor have worked on the motor home and believe that the cause of the battery problem you identified, as well as any other issues, have been remedied. Therefore, Blue Bird has fully complied with the requirements of its warranty and the Minnesota lemon law." This letter went on to reiterate Blue Bird's willingness to continue working with Oren and Shorewood RV "to assure [Oren] that the motor home conforms to the warranty."

On November 29, 2004, Oren replied to Blue Bird's attorney, enclosing a spreadsheet detailing the problems he had experienced with the RV and stating:

> My purpose in sending along this information is to document the fact that neither Blue Bird, nor its authorized representative, Shorewood

R.V. Center [], has succeeded in meeting its obligations to conform the vehicle to the applicable express warranties. As the record clearly demonstrates, even after a reasonable number of attempts to repair the electrical and other problems that have haunted this unit, it remains unfit for the purpose it was intended; therefore, I reiterate my demand that Blue Bird make a full refund of the purchase price of the unit.

Blue Bird's attorney responded on December 1, 2004, asserting there was "nothing wrong" with the RV, and "Blue Bird has lived up to its obligations under the warranty." Oren wrote back to Blue Bird's attorney on December 6, 2004, indicating he would consider litigation if the matter were not acceptably resolved. On January 4, 2005, plaintiffs' attorney wrote Blue Bird's attorney in an attempt to schedule the matter for informal arbitration, as provided by the alternative dispute settlement mechanism set forth in Minnesota's Lemon Law.

Thereafter, Oren learned from Shorewood RV that Parliament Coach, an RV dealer in Florida, might be interested in purchasing the RV. In February 2005, Oren agreed to sell the RV to Parliament Coach for $225,000, resulting in a loss to plaintiffs of over $100,000. Before the sale, Oren fully disclosed to Parliament Coach the problems Oren had experienced with the RV.[2]

Oren informed Shorewood RV someone from Parliament Coach would be coming to Shorewood RV the next day to take the RV. Oren admits he did not inform Blue Bird of the sale. Blue Bird did not learn until March 29, 2005, that plaintiffs sold the RV.

---

[2]Parliament Coach attempted to repair the RV, later selling it to a subsequent owner who experienced problems similar to the ones Oren experienced.

On May 24, 2005, Blue Bird informed plaintiffs it refused to participate in arbitration based on its belief the Lemon Law claim no longer applied after plaintiffs sold the RV. On July 15, 2005, plaintiffs filed suit in Minnesota state court against Blue Bird. Blue Bird removed the case to federal court based on diversity of citizenship. Plaintiffs later amended their complaint, adding Shorewood RV as a defendant.

Defendants moved for summary judgment. The magistrate recommended granting defendants' motion with respect to all plaintiffs' claims except plaintiffs' state law claim for breach of express warranty. Viewing the evidence in the light most favorable to the plaintiffs, the magistrate determined a factfinder could reasonably conclude plaintiffs' breach of express warranty claim did not accrue until on or after November 19, 2003, and, therefore, the claim was not barred by the one year limitations period contained in Blue Bird's Limited Warranty. The parties filed objections to the magistrate's Report and Recommendation.

The district court concluded defendants were entitled to summary judgment on all of plaintiffs' claims, including the state law claim for breach of express warranty. The district court determined, as a matter of law, plaintiffs' breach of express warranty claim was untimely because the claim accrued no later than July 8, 2004, and plaintiffs filed suit more than one year later, on July 15, 2005. Plaintiffs now argue: (1) their breach of express warranty claim was timely; (2) Blue Bird's repeated promises to repair the RV tolled the limitations period on plaintiffs' breach of express and implied warranty claims; (3) plaintiffs' sale of the motor home did not bar their Minnesota Lemon Law Claim; and (4) plaintiffs were entitled to pursue their claims for revocation of acceptance against Blue Bird and Shorewood RV.

## II.    DISCUSSION

### A.    Standard of Review

"This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court." Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998) (citations omitted). We will find the district court's grant of summary judgment proper "when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Id. (citations omitted).[3]

### B.    Breach of Warranty

#### 1.    Accrual of Breach of Express Warranty Claim

Plaintiffs argue the district court erred by finding their claim for breach of express warranty was barred by the one year limitations period contained in Blue Bird's Limited Warranty. The limited warranty guaranteed certain components of the RV would "be free from defects in material and workmanship" for specified periods of time. It also provided, "[a]ny suit alleging a breach of this limited warranty or any other alleged warranty must be filed within one year of breach."[4]

Under Minnesota law, "[a] cause of action [for breach of warranty] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the

---

[3]The limited warranty provided Georgia law shall govern the warranty, but the parties and the district court have agreed to apply Minnesota law under the assumption the two state laws are identical. We will continue to apply Minnesota law under the same assumption. We note the dissent's interpretation of the limited warranty also exclusively relies on Minnesota law and anticipates what the Minnesota Supreme Court would do.

[4]Minnesota law provides a four year statute of limitations "for breach of any contract for sale." Minn. Stat. § 336.2-725(1). However, the parties may agree to "reduce the period of limitation to not less than one year . . . ." Id.

breach." Minn. Stat. § 336.2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id. Thus, when a warranty extends to future performance, the cause of action accrues "when the plaintiff discovers or should have discovered the defendant's refusal or inability to maintain the goods as warranted in the contract." Anderson v. Crestliner, Inc., 564 N.W.2d 218, 223 (Minn. App. 1997) (quoting Church of the Nativity of Our Lord v. WatPro, Inc., 491 N.W.2d 1, 6 (Minn. 1992), overruled by Ly v. Nystrom, 615 N.W.2d 302 (Minn. 2000)).

The parties agree the limited warranty explicitly extends to future performance by guaranteeing certain components of the RV would "be free from defects in material and workmanship" for specified periods of time. Because the limited warranty extends to future performance, Oren's breach of warranty claim accrued on the date Oren "discover[ed] or should have discovered [Blue Bird]'s refusal or inability to maintain the [RV] as warranted in the contract." See id.

The parties agree Blue Bird expressed a continued willingness to repair the RV long after July 8, 2004. Thus, our concern is not the date Blue Bird refused to maintain the RV, but the date Oren discovered Blue Bird's inability to maintain the RV as warranted. The parties dispute when this discovery occurred. Blue Bird argues, and the district court found, that by July 8, 2004, Oren firmly believed Blue Bird was unable to maintain the RV as warranted. The district court determined, as a matter of law, Oren's July 8, 2004 letter unequivocally demonstrated Oren's belief Blue Bird was unable to maintain the RV as warranted. We disagree.

Oren's July 8, 2004 letter stated, in relevant part:

> . . . After almost a year of continued problems with this motor home, I have come to three conclusions. First, the Model M380 was released before it had been properly designed, tested, and debugged. Second, Shorewood RV is a terrific dealer for you, but even they could not overcome the inherent problems in the M380. Third, I have run out of patience, confidence, and trust that the problems can be fixed in a reasonable time, and I request that you return my purchase price.

> . . . .

> On July 2, 2004, after the engine batteries once again died, I removed all my personal belongings and returned the coach to the dealer. This was the final event—the last straw.

> Suffice it to say that I am out of patience, and that both of our lives will be made easier if you will simply authorize a repurchase of the coach at its original cost. This coach simply needs to be permanently recalled until major corrections are made.

> . . . .

> . . . I'm not interested in further retrofits, patches, or excuses. I will never take this coach back.

Oren's July 8, 2004 letter certainly evidences Oren's high level of frustration and disgust with the need for repeated repairs on the RV. However, the district court erred by concluding as a matter of law that Oren believed the RV was *beyond repair* as of that date. Oren's statement he had "run out of patience, confidence, and trust that the problems can be fixed in a reasonable time" does not necessarily mean Oren, at that moment, believed the RV was beyond repair. A factfinder could just as reasonably conclude Oren was simply tired of dealing with the RV's defects. Saying "I am out of patience" or "I'm not interested in further retrofits, patches, or excuses"

is not the same as saying, "I believe Blue Bird is incapable of maintaining this RV as warranted."

The fact Oren allowed additional repairs to be completed on July 31, August 19, September 28, and October 4, 2004, strongly suggests Oren continued to believe Blue Bird *was* capable of eventually repairing the RV. It was not until November 29, 2004, that Oren first informed Blue Bird he believed Blue Bird had failed "in meeting its obligations to conform the vehicle to the applicable express warranties." We conclude a genuine issue of material fact exists regarding the date Oren knew or should have known Blue Bird was unable to maintain the RV as warranted.

### 2.   Accrual of Breach of Implied Warranty Claim

Unlike express warranties, under Minnesota law, "[i]mplied warranties cannot, by their very nature, explicitly extend to future performance." Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 879 (8th Cir. 2000) (citation omitted). See also Nelson v. Int'l Harvester Corp., 394 N.W.2d 578, 582 (Minn Ct. App. 1986), overruled on other grounds by Lloyd F. Smith Co., Inc. v. Den-Tal-Ez, Inc., 491 N.W.2d 11 (Minn. 1992).[5]  A breach of implied warranty occurs, and the claim accrues, "when tender of delivery is made. . . ." Minn. Stat. § 336.2-725(2). Thus, the fact Blue Bird expressly warranted various components of the RV would be free from defects for specified periods of time after tender of delivery does not extend the accrual date for a breach of implied warranty claim. The parties agree tender of delivery of the RV occurred on July 31, 2003. Plaintiffs filed suit almost two years later, on July 15, 2005. Plaintiffs' breach of implied warranty claim is therefore

---

[5]Plaintiffs do not argue the implied warranty limitation is inconspicuous and do not assert implied warranties may extend to future performance under Minnesota law. Contrary to the dissent, we follow our general rule not to consider issues not raised by the parties or the district court, because such issues are waived. See Stephenson v. Davenport Cmty. Sch. Dist., 110 F.3d 1303, 1306-07 n.3 (8th Cir. 1997) (quoting Bechtold v. City of Rosemount, 104 F.3d 1062, 1068 (8th Cir. 1997)).

untimely, unless Blue Bird is equitably estopped from asserting the statute of limitations defense.[6]

### 3. Equitable Estoppel

Plaintiffs argue even if their breach of express warranty claim accrued on July 8, 2004, and their breach of implied warranty claim accrued on July 31, 2003, the limitations period was tolled until at least November 2004 because Blue Bird repeatedly promised to repair the RV and conform it to the limited warranty. Under the doctrine of equitable estoppel, if a buyer delays filing suit as a result of reasonable and detrimental reliance on a seller's assurances it will repair the defective goods, the limitations period is tolled during that period of delay.[7] See Lake Superior Ctr.

---

[6]In addition to their state law claims for breach of express and implied warranty, plaintiffs assert claims against Blue Bird for breach of express and implied warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312. The parties agree that, because the Magnuson-Moss Warranty Act contains no statute of limitations, plaintiffs' Magnuson-Moss claims are governed by the same limitations period as plaintiffs' state law breach of warranty claims. See Sernak v. Krenzen Cadillac, Inc., 415 N.W.2d 92, 94 (Minn. Ct. App. 1987). See also Hrycay v. Monaco Coach Corp., No. 07-2605, 2008 WL 638235, at *4 (E.D. Pa. March 7, 2008) (explaining, because the Magnuson-Moss Warranty Act does not contain a statute of limitations, courts borrow the most closely analogous state statute of limitations, which is the statute of limitations found in the U.C.C.).

[7]Plaintiffs do not argue or propose equitable tolling may exist from promises to repair alone without detrimental reliance by plaintiffs. See, e.g., Colorado-Ute Elec. Ass'n, Inc. v. Envirotech Corp., 524 F. Supp. 1152, 1155-56 (D. Colo. 1981). Such arguments are now waived. See Stephenson, 110 F.3d at 1306-07 n.3. Furthermore, the Minnesota Supreme Court has noted the "so called 'repair theory' has *not* been afforded universal acceptance." Hydra-Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 919 n.4 (Minn. 1990) (emphasis added). Under Minnesota law, equitable tolling applies only with detrimental reliance. See Sohns v. Pedersen, 354 N.W.2d 852, 855 (Minn. Ct. App. 1984) ("Estoppel requires proof of three elements: 1) defendant made representations on which 2) plaintiff reasonably relied, and 3) plaintiff will be harmed if equitable estoppel is not invoked.) (citation omitted)).

Authority v. Hammel, Green & Abrahamson, Inc., 715 N.W.2d 458, 473 (Minn. Ct. App. 2006) (discussing defects in real property); J & D Constr., Inc. v. Ramy Int'l. Ltd., No. C4-01-498, 2001 WL 969146, at *3 (Minn. Ct. App. Aug. 28, 2001); U.S. Leasing Corp. v. Biba Info. Processing Servs., Inc., 436 N.W.2d 823, 826 (Minn. Ct. App. 1989); Sohns, 354 N.W.2d at 855. See generally Hydra-Mac, 450 N.W.2d at 919 n.4. "While estoppel is ordinarily a question of fact for the jury, when only one inference can be drawn from the facts, the question is one of law." U.S. Leasing Corp., 436 N.W.2d at 826 (quoting L & H Transport, Inc. v. Drew Agency, Inc., 403 N.W.2d 223, 227 (Minn. 1987)).

There is ample evidence in the record from which a factfinder could conclude Blue Bird made ongoing assurances it would repair the RV. After Oren delivered the RV to Shorewood RV's lot on July 2, 2004, Blue Bird technicians attempted repairs on July 31, August 19, September 28, and October 4, 2004. On September 7, 2004, Blue Bird rejected Oren's request for a refund but maintained, "We are committed to working with our Dealers and Customers to resolve any service needs that may occur." As late as November 2004, Blue Bird asserted it had complied with Minnesota's Lemon Law and the requirements of its warranty, although reiterating its willingness to continue working with Oren and Shorewood RV to "assure [Oren] that the motor home conforms to the warranty."

The critical question, then, is whether plaintiffs delayed filing suit as a result of reasonable and detrimental reliance on Blue Bird's ongoing assurances to repair the RV, and, if so, on what date plaintiffs' reliance (and the tolling of the limitations period) ended.[8] There is no evidence in the record from which a reasonable factfinder could conclude plaintiffs reasonably and detrimentally relied on Blue Bird's efforts

---

[8]Oren brought the RV to Shorewood RV on a number of occasions between August 2003 and April 2004, and frequent repairs were attempted. We will assume, as the district court did, that the limitations period was tolled during at least some of this period of time.

or promises to repair the RV after Oren delivered the RV to Shorewood RV's lot on July 2, 2004. On the contrary, by July 2, 2004, Oren manifested no reliance on Blue Bird's or Shorewood RV's assurances the defective RV would soon be repaired. Although plaintiffs insist Blue Bird "resorted to bald assertions that the motor home was not defective despite its continuing failures and need for repairs," plaintiffs do not claim Oren believed these assertions or that plaintiffs delayed filing suit as a result of detrimentally relying upon such assertions. Nowhere do plaintiffs maintain Blue Bird's assurances or repair attempts after July 2, 2004, caused any detrimental reliance, nor does the record support such an inference. The fact Oren may have believed Blue Bird was capable of eventually repairing the RV falls far short of establishing that Oren detrimentally relied upon Blue Bird's promises to repair the RV. On July 8, 2004, Oren wrote Blue Bird's CEO announcing the "last straw," and explaining Oren had run "out of patience . . . that the problems can be fixed in a reasonable time," and he was "not interested in further retrofits, patches, or excuses." Because plaintiffs have identified no action they took or failed to take after July 2, 2004, in reliance upon any statements or actions of Blue Bird, the district court did not err by determining, as a matter of law, plaintiffs were not entitled to equitable tolling.

### C.  Minnesota Lemon Law

Plaintiffs argue the district court erred by finding plaintiffs' resale of the RV prevents their claim under Minnesota's Lemon Law. The Minnesota Lemon Law provides:

> If the manufacturer . . . [is] unable to conform [a] new motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use or market value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall either replace the new motor vehicle with a comparable motor vehicle or *accept return of the vehicle from the consumer* and refund to the consumer the full purchase price . . . . If the manufacturer offers a replacement vehicle under this section, the

consumer has the option of rejecting the replacement vehicle and requiring the manufacturer to provide a refund.

Minn. Stat. § 325F.665, subd. 3(a) (emphasis added).

Plaintiffs contend they were entitled to sell the RV because they offered to return the RV, but Blue Bird refused to refund the purchase price. This argument fails. Our disposition of plaintiffs' Lemon Law claim follows Pfeiffer v. Ford Motor Co., 517 N.W.2d 76 (Minn. Ct. App. 1994). In Pfeiffer, the plaintiffs sold their allegedly defective vehicle after they were denied relief by Ford Motor Company's informal dispute mechanism under the Minnesota Lemon Law. Id. at 77. Plaintiffs then filed suit against Ford under the Minnesota Lemon Law. Id. The Minnesota Court of Appeals affirmed the district court's dismissal of the plaintiffs' Lemon Law claim, concluding "[a] plain, common sense reading of this statute evidences a requirement of tender of the allegedly defective vehicle in order to recover under the Lemon Law." Id. at 80. Merely offering to return the vehicle is insufficient—the plain language of the statute conditions a consumer's refund on the manufacturer "accept[ing] return of the vehicle from the consumer." See Minn. Stat. § 325F.665, subd. 3(a). Plaintiffs did not comply with the law's tender requirement because plaintiffs did not return the RV to Blue Bird.

The Pfeiffer court further explained the tender requirement comports with the Lemon Law's purpose of protecting subsequent consumers, reasoning, "it is inconsistent to allow a Lemon Law recovery, while allowing the same injured party to pass the defective auto on to another consumer without notice or the warranty protections provided to the first owner." Pfeiffer, 517 N.W. 2d at 80. Plaintiffs insist they complied with the purpose of the Lemon Law because, before selling the RV, they fully disclosed to Parliament Coach all the problems Oren had experienced with the RV. We disagree. Minnesota's Lemon Law "requires that clear labeling and notice be provided to subsequent purchasers of a vehicle returned due to incurable

-14-

defects," id. (citing Minn. Stat. § 325F.665, subd. 5(a)(2)), and also requires the manufacturer to provide continued warranty coverage to the new owner. Minn. Stat. § 325F.665, subd. 5(a)(1). Oren's disclosure to Parliament Coach of the RV's problems was insufficient to extend all of the Lemon Law's protections to the RV's subsequent owner. We agree with the district court's reading of Pfeiffer and the Minnesota Lemon Law that a plaintiff who passes his lemon to another consumer before trial cannot pursue a claim under Minnesota's Lemon Law.[9]

---

[9]In addition to the Lemon Law analysis, the Pfeiffer court states, "We agree with the respondent insofar as the Magnuson-Moss Warranty Act claim is concerned because, as with Minnesota's Lemon Law, *there is a requirement for return of the vehicle prerequisite to a remedy*." Id. at 80 (citing 15 U.S.C. § 2304(a)(4)) (emphasis added). The parties and the district court seem to overlook this passage in Pfeiffer. Instead, the parties apparently agree, if we find plaintiffs' state law breach of warranty claims are viable, then plaintiffs' Magnuson-Moss warranty claims are viable too. See supra note 4.

Under 15 U.S.C. § 2304(b)(2), "a warrantor may require, as a condition to replacement of, or refund for, any consumer product under subsection (a) of this section, that such consumer product shall be *made available to the warrantor . . . .*" (emphasis added). In isolation, this section appears to require return of the vehicle. The Illinois Court of Appeals has held § 2304(b)(2) applies only to full warranties, not limited warranties like the one in this case. See Lara v. Hyundai Motor America, 770 N.E.2d 721, 727 (Ill. App. Ct. 2002). See also 15 U.S.C. § 2303. Unlike a Lemon Law claim, the Magnuson-Moss Warranty Act further allows a plaintiff to recover damages, and refund or replacement is not the exclusive remedy. See 15 U.S.C. § 2310(d). Plaintiffs now are asking for damages under the Magnuson-Moss Warranty Act, not a refund. Pfeiffer is incorrect that return of the vehicle is a prerequisite to all remedies under the Magnuson-Moss Warranty Act.

-15-

**D.    Revocation of Acceptance**

**1.    Revocation of Acceptance Against Shorewood RV**

Plaintiffs contend the district court erred by granting defendants' motion for summary judgment on plaintiffs' revocation of acceptance claims against Blue Bird and Shorewood RV. Specifically, plaintiffs argue the district court erred by determining, as a matter of law, plaintiffs revoked acceptance only against Blue Bird and not against Shorewood RV.

A buyer may revoke acceptance of a "commercial unit whose nonconformity substantially impairs its value to the buyer" if the buyer was unable to discover the nonconformity at the time of delivery. Minn. Stat. § 336.2-608(1). "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it." Minn. Stat. § 336.2-608(2). The revocation must be unequivocal. See Barry & Sewall Indus. Supply Co. v. Metal-Prep of Houston, Inc., 912 F.2d 252, 257 (8th Cir. 1990). However, the notice of revocation is not required to "assume any particular format . . . ." Cissell Mfg. Co. v. Park, 36 P.3d 85, 89 (Colo. Ct. App. 2001). Rather, "[t]he notice of revocation, to be sufficient, should fairly apprise the seller that the buyer wants to give back the goods and receive a substitute or money in return." Id. (citing William Hawkland, Uniform Commercial Code Series § 2-608:5).

On July 2, 2004, Oren returned the RV to Shorewood RV. Oren removed his belongings and gave the keys to Shorewood RV. Oren informed Santarsiero he was returning the RV as of that day. At Santarsiero's suggestion, Oren wrote a letter to Blue Bird's CEO requesting a refund. Oren copied Santarsiero on the letter.

The fact Oren took Santarsiero's suggestion and sought a refund from Blue Bird does not, as a matter of law, defeat Oren's revocation of acceptance claim against

Shorewood RV. A reasonable factfinder could readily conclude Oren's return of the RV and Oren's conduct and discussions with Santarsiero were sufficiently unequivocal to notify Shorewood RV that Oren intended to revoke acceptance of the RV and obtain a refund. Because material fact questions exist regarding whether Oren effectively revoked acceptance against Shorewood RV, we conclude the district court erred by determining, as a matter of law, plaintiffs revoked acceptance only against Blue Bird and not against Shorewood RV.

### 2. Reacceptance

Defendants maintain, even if plaintiffs effectively revoked acceptance against both Blue Bird and Shorewood RV, plaintiffs' resale of the RV constituted reacceptance, which defeats plaintiffs' revocation of acceptance claim against both defendants as a matter of law.

"[U]pon notice of revocation, the buyer must not indulge in any action which would indicate that he has reaccepted the goods." Barry & Sewall Indus. Supply Co., 912 F.2d at 257. "A buyer's act of dominion over goods, including sale of the goods, is inconsistent with a buyer's claim of revocation of acceptance." Chancellor Development Co. v. Brand, 896 S.W.2d 672, 676 (Mo. Ct. App. 1995) (citations omitted); see also Pettibone Minnesota Corp. v. Castle, 247 N.W.2d 52, 53 (Minn. 1976) (per curiam) ("The sale by defendant of the machinery to others was an act 'inconsistent with the seller's ownership.'" (quoting Minn. Stat. § 336.2-606(1)(c))).

Under certain circumstances, a buyer's resale of nonconforming goods will not defeat the buyer's claim for revocation of acceptance. Minn. Stat. § 336.2-711(3) states,

> On rightful rejection or justifiable revocation of acceptance a buyer has
> a security interest in goods in the buyer's possession or control for any
> payments made on their price and any expenses reasonably incurred in
> their inspection, receipt, transportation, care and custody and may hold

such goods and resell them in like manner as an aggrieved seller (section 336.2-706).

If an aggrieved seller resells nonconforming goods "in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages . . . , but less expenses saved in consequence of the buyer's breach." Minn. Stat. § 336.2-706(1). The resale may be a public or private sale. Minn. Stat. § 336.2-706(2). "Where the resale is at a private sale the seller must give the buyer reasonable notification of an intention to re-sell." Minn. Stat. § 336.2-706(3). If the aggrieved party resells the goods without providing notification of an intention to resell, the resale does not meet the requirements of § 336.2-706(3). See, e.g., Jack Rabbit Lines, Inc. v. Neoplan Coach Sales, Inc., 551 N.W.2d 18, 20 (S.D. 1996) (determining the aggrieved buyer's failure to notify the seller of its intention to resell at a private sale precluded recovery of damages otherwise allowable under U.C.C. § 2-706); Massey v. Moore, 633 So. 2d 1044, 1047 (Miss. 1994) (reasoning the seller violated the notice requirements of U.C.C. § 2-706(3) by failing to notify the buyer of his intention to resell goods at a private sale); Kleiderfabrik v. Peters Sportswear Co., Inc., 483 F. Supp. 1228, 1234 (E.D. Pa. 1980) (explaining "§ 2-711(3) explicitly requires the buyer to follow the procedures for sale set forth in § 2-706[,]" and when a buyer sold the defective goods, "without observing the requirements of § 2-706, it went beyond the range of permissible conduct for a buyer in possession of rejected goods, and it was no longer protected against liability by the Code"); Anheuser v. Oswald Refractories Co., Inc., 541 S.W.2d 706, 711 (Mo. Ct. App. 1976) (holding, "when a seller avails himself of the remedy afforded by [U.C.C. § 2-706] he must comply with all of the terms of that section and the burden of showing compliance is on the seller").

It is undisputed Oren did not inform Blue Bird he intended to sell the RV. Blue Bird only learned of the sale after the RV was sold. Thus, with respect to Blue Bird, plaintiffs failed to sell the RV in a commercially reasonable manner with reasonable

notice to Blue Bird, as required by Minn. Stat. § 336.2-706, and therefore are precluded from recovering under Minn. Stat. § 336.2-706. We conclude plaintiffs' resale of the RV was inconsistent with plaintiffs' claim of revocation of acceptance as to Blue Bird and constituted a reacceptance of the RV. Blue Bird is entitled to summary judgment on plaintiffs' revocation of acceptance claim.[10]

The question of whether plaintiffs provided Shorewood RV sufficient notification of their intention to resell the RV only arises if the factfinder determines plaintiffs effectively revoked acceptance against Shorewood RV. Assuming the factfinder resolves this issue in plaintiffs' favor, we conclude there is no doubt plaintiffs complied with the notice requirement of § 336.2-706. On September 14, 2004, Oren and Shorewood RV signed a Consignment Agreement, giving Shorewood RV the exclusive right to sell the RV. It was Shorewood RV that informed Oren that Parliament Coach might be interested in purchasing the RV. After Oren agreed to sell the RV to Parliament Coach, Oren notified Shorewood RV someone from Parliament Coach would be coming to Shorewood RV the next day to pick up the RV. These acts, as a matter of law, were sufficient to meet the notice requirements of § 336.2-

---

[10]The district court reasoned Blue Bird was entitled to summary judgment on plaintiffs' revocation of acceptance claim because plaintiffs' claim could not proceed solely against Blue Bird (the nonselling manufacturer) where plaintiffs failed to revoke acceptance against Shorewood RV (the immediate seller). As discussed above, genuine issues of material fact exist regarding whether plaintiffs effectively revoked acceptance against Shorewood RV. We need not decide whether Blue Bird, as a nonselling manufacturer, can properly be the subject of plaintiffs' revocation of acceptance claim, because plaintiffs' resale of the RV, without prior notice to Blue Bird, defeats plaintiffs' revocation of acceptance claim against Blue Bird. See Pro Service Automotive, L.L.C. v. Lenan Corp., 469 F.3d 1210, 1213 (8th Cir. 2006) ("We may affirm the district court's grant of summary judgment on any ground supported by the record.").

706(3).[11]   Assuming plaintiffs' revocation of acceptance was effective against Shorewood RV, plaintiffs' resale of the RV did not constitute reacceptance.[12]

## III.   CONCLUSION

Genuine issues of material fact exist with respect to plaintiffs' breach of express warranty and Magnuson-Moss warranty claims against Blue Bird and plaintiffs' revocation of acceptance claim against Shorewood RV. We reverse the district court's grant of summary judgment on these claims. We affirm the district court's grant of summary judgment on (1) the equitable tolling issue, (2) plaintiffs' claim under the Minnesota Lemon Law, and (3) plaintiffs' revocation of acceptance claim against Blue Bird.

BEAM, Circuit Judge, concurring and dissenting.

I concur in the conclusions reached by the panel majority (the court) except for its affirmance of the district court's erroneous rejection of Oren's implied warranty claims based upon Blue Bird's statute of limitation defense. On this issue, I respectfully dissent and would remand the implied warranty claims for trial.

---

[11]Defendants apparently agree plaintiffs' resale otherwise met the requirements that the resale be "made in good faith and in a commercially reasonable manner. . . ." Minn. Stat. § 336.2-706(1). Thus, we need not address these requirements.

[12]Defendants additionally propose plaintiffs, after July 2, 2004, no longer had a security interest in the RV because Shorewood RV possessed the RV. It is true Shorewood RV possessed the RV, but this is not the end of the analysis. Plaintiffs still controlled the RV, as far as Shorewood RV was concerned. Shorewood RV continued to conduct repairs for plaintiffs and entered into a Consignment Agreement to resell the defective RV at plaintiffs' direction and with plaintiffs' consent. See Minn. Stat. § 336.2-711(3) (declaring, upon rejection or revocation, "a buyer has a security interest in goods in the buyer's . . . control . . . ."). Plaintiffs potentially maintained their security interest in the RV.

## INTRODUCTION

The court purposely ignores several relevant and controlling statutory issues because the parties fail, in its view, to engage in formal discussion and disputation of the matters. But, causes of action based upon implied warranty, and affirmative defenses to them, were directly joined in the district court and should be fully dealt with in this appeal. Indeed, appellate courts often of necessity resolve issues on the basis of the record alone, even without argument and briefing by the parties, where, as here, injustice might otherwise result. Singleton v. Wulff, 428 U.S. 106, 120-21 (1976); see also Nat'l Metalcrafters v. McNeil, 784 F.2d 817, 825 (7th Cir. 1986); Pro Svc. Auto., L.L.C. v. Lenan Corp., 469 F.3d 1210, 1213 (8th Cir. 2006).

Unless otherwise properly modified or excluded, the Minnesota Uniform Commercial Code (UCC), as an incident of public policy, requires implied warranties of merchantability and fitness for a particular purpose to flow as a matter of law to a purchaser of goods, even outside the four corners of a written sales agreement. In Minnesota, these warranties run from both the manufacturer, here Blue Bird, and the immediate seller, here Shorewood. Minn. Stat. Ann. §§ 336.2-314; 2-315. Nelson v. Int'l Harvester Corp., 394 N.W.2d 578, 581 (Minn. Ct. App. 1986), overruled on other grounds by Lloyd F. Smith Co., Inc. v. Den-Tal-Ez, Inc., 491 N.W.2d 11 (Minn. 1992).[13]

---

[13]While the warranties at issue provide that Georgia law governs their terms, the court says the parties agreed to apply Minnesota law, purportedly because the parties assumed that there were no differences in the law of the two states. This assumption is incorrect. Georgia, unlike Minnesota, requires direct privity between a manufacturer and a purchaser in order for an implied warranty to be binding. McQueen v. Minolta Business Solutions, Inc., 620 S.E.2d 391, 393-94 (Ga. Ct. App. 2005). The immediate contract of sale in this case was between the manufacturer's dealer, Shorewood, and buyer Oren even though some of the warranties extended to

## BACKGROUND

The Blue Bird RV, "goods" as defined in Minn. Stat. Ann. § 336.2-105(1), was delivered to Oren by Shorewood, Blue Bird's authorized dealer, on July 31, 2003. Oren filed suit against Shorewood and Blue Bird in Minnesota state court on July 15, 2005. The vehicle was accompanied by a Blue Bird "limited warranty." Appellants' Add. at 52-53. An exact copy of this warranty as delivered to Oren is attached to and incorporated within this dissent by reference as Appendix A.

The relevant sections and subsections (or portions thereof) of the Minnesota UCC that govern both the express and implied warranties that were extended to Oren are as follows:

**General definitions**

. . .

(b)(10)    "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:

    (A)    a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

    (B)    language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off

---

Oren by Shorewood were underwritten and to be performed by Blue Bird.

from surrounding text of the same size by symbols or other marks that call attention to the language.

Minn. Stat. Ann. § 336.1-201(b)(10).

**Express Warranties by affirmation, promise, description, sample**

(1)    Express warranties by the seller are created as follows:

(a)    Any affirmation of fact or promise made by the seller to the buyer which relate to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)    Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

. . .

(2)    It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Minn. Stat. Ann. § 336.2-313.

**Implied warranty: merchantability; usage of trade**

(1)    Unless excluded or modified (section 336.2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

-23-

(2)　Goods to be merchantable must be at least such as

    (a)　pass without objection in the trade under the contract description; and

    (b)　in the case of fungible goods, are of fair average quality within the description; and

    (c)　are fit for the ordinary purposes for which such goods are used; and

    (d)　run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

    (e)　are adequately contained, packaged, and labeled as the agreement may require; and

    (f)　conform to the promises or affirmations of fact made on the container or label if any.

(3)　Unless excluded or modified (section 336.2-316) other implied warranties may arise from course of dealing or usage of trade.

Minn. Stat. Ann. § 336.2-314.

**Implied warranty; fitness for particular purpose**

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Minn. Stat. Ann. § 336.2-315.

**Exclusion or modification of warranties**

(1)     Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (section 336.2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.

(2)     Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. . . .

(3)     Notwithstanding subsection (2)

        . . .

        (c)     an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

. . .

Minn. Stat. Ann. § 336.2-316.

**Statute of limitations in contracts for sale**

(1)     An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2)     A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the

-25-

goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

. . .

(4) This section does not alter the law on tolling of the statute of limitations, nor does it apply to causes of action which have accrued before this chapter becomes effective.

. . .

Minn. Stat. Ann. § 336.2-725.

**DISCUSSION**

**I.**

As stated above, the UCC provides that breach of an implied warranty "must be commenced within four years" but the parties may reduce the period of limitation by agreement to not less than one year. Minn. Stat. Ann. § 336.2-725(1). Thus, by agreement, the UCC authorized Blue Bird to shorten the period to one year subject to restrictions set forth in section 336.2-316(2) above, that is that any modifications or exclusions be in writing, unambiguous, and mention the word "merchantability." Dubbe v. A.O. Smith Harvestore Prods., Inc., 399 N.W.2d 644, 647-48 (Minn. Ct. App. 1987). In Dubbe, the trial court and court of appeals found the manufacturer's warranty disclaimer sufficient as a matter of law. The Minnesota court noted that Harvestore had totally disclaimed all implied warranties, *capitalized* all words in the entire disclaimer section, and specifically mentioned the word "merchantability." The courts also observed that Mr. Dubbe stated in the agreement that he had read the disclaimer. Id. In this case, however, on the crucial issues of disclaiming implied warranties and reducing the litigation limitation period as authorized by Minn. Stat.

-26-

Ann. § 336.2-725(1), we face very different facts. Oren makes no statement that he was asked to or did read the language outlining the reduced limitation period. And, as noted in Appendix A, the capitalized language dealt not with the lawsuit limitation period but rather created the overall length of the warranty period, including an implied warranty duration of two or three years, limited the nature of some recoverable damages, and specified which of Blue Bird's employees could make additional representations. It bears repeating that this capitalized portion of the contract did not at all deal with the period of time in which litigation could be commenced for breach of any of the warranties. Indeed, the statute of limitation reduction language is found in a wholly new paragraph presented in significantly smaller, uncapitalized type. The new paragraph totally deals with a different subject than the capitalized portions. Blue Bird slips the limitation language into the fourth and last sentence of the new paragraph, which sentence reads, in isolation both as to location and subject matter, as follows: "[a]ny suit alleging a breach of this limited warranty or any other alleged warranty must be filed within one year of breach." There is no mention of either "implied warranty" or "merchantability" within or near this supposedly limiting language.

This crucial, purportedly limiting language violates Minn. Stat. Ann. § 336.1-201(b)(10)(A) and (B) of the UCC which, as earlier stated, requires capital letters equal or greater in size than the surrounding text or use of contrasting type, font or color or set-offs that call attention to the language. See Valley Paving, Inc. v. Dexter & Chaney, Inc., No. C2-00-361, 2000 W.L. 1182800, at *1-2 (Minn. Ct. App. Aug. 22, 2000). As a matter of law, this limiting language relied upon by Blue Bird and the court is both inconspicuous and ambiguous. Accordingly, reviewing the matter de novo as we must, a four-year statute of limitations should apply.

## II.

Assuming, but purely for argument's sake, the validity of Blue Bird's claimed one-year statute of limitation, and its contention that the limitation period began to run at the time of the July 31, 2003, delivery, Oren's implied warranty of merchantability claim is still not barred. As an initial matter, Blue Bird's express warranties purport to be valid for either two or three years and the implied warranties "are limited to the warranty period of this written warranty." Appendix A. Giving Oren the benefit of these inconsistent terms, the warranty period for the implied warranties would be three years. Nonetheless, for our purposes, a two-year period is more than enough. And, while there is probably an implied warranty of fitness for a particular purpose under Minn. Stat. Ann. § 336.2-315 that may have passed to Oren, it is not particularly relevant to my concerns. An implied warranty of merchantability was clearly imposed upon Blue Bird as a matter of law and public policy under Minn. Stat. Ann. § 336.2-314[14] and such a warranty carries with it measures of liability and damages beyond those purportedly "excluded" or "modified" by Blue Bird's "limited warranty." See Minn. Stat. Ann. § 336.2-316. Thus, the viability of the merchantability warranty is more than of academic interest to Oren.

Without argument, Blue Bird expressly warranted the RV to be free from defects in at least three ways. See Appellants' Add. at 52. And, as conceded by both Blue Bird and the court, there is little doubt that the RV was "defective" when delivered and, according to the court, little doubt that the vehicle was never "merchantable" at any time relevant to this dispute, or, at least, a fact question not reachable through summary judgment exists on this issue.

---

[14]Section 336.2-314(2)(a)-(f) defines "merchantability."

-28-

In this regard, paragraph one of the "Limited Warranty" is of particular interest. It says "3. For a period of two (2) years from the date of delivery to the original purchaser [Blue Bird] warrants all other components installed by Blue Bird and Wonderlodge." Id. Then, in the third and sixth paragraphs of the "Limited Warranty," Blue Bird reserves for this two-year period the right to attempt to cure any defects and make the vehicle merchantable as required by the implied warranty. Accordingly, if you credit Blue Bird's one-year statute of limitation affirmative defense and attempt to square it with the court's conclusions in this appeal, the one-year lawsuit limitations period for the implied warranties "expired" well before Blue Bird gave up its right to cure the defects which would have made the RV comply with the requirements of the implied warranty. This result flies in the face of approximately fifty years of consumer equity policy imbedded within the enactment of the Uniform Commercial Code in, by now, all fifty states, some territories, and a commonwealth. Blue Bird's clever penmanship and paragraph positioning cannot be allowed to overrule the policy pronouncements of the Uniform Commercial Code.

## III.

Even if you avoid the ambiguity, conspicuousness and public policy problems inherent in the facts at work in this case, a further, and perhaps more important, error lurks within the court's opinion. I again assume for purposes of discussion the validity of the court's analysis that Oren's cause of action for breach of the implied warranty occurred upon delivery of the "unmerchantable" RV on July 31, 2003. I further assume that a statute of limitations period of one year binding upon Oren also commenced on that date. Nonetheless, Minn. Stat. Ann. § 336.2-725, the UCC section that authorizes a reduction in the limitation period, also states in subsection (4) that "[t]his section does not alter the law on tolling of the statute of limitations." Thus, any law on tolling available to Oren in Minnesota interrupted the running of the limitation period applicable to this RV sale. At least three tolling theories serve to protect Oren's breach of implied warranty cause of action. They include the doctrines of equitable

estoppel, estoppel through misrepresentation and estoppel by repair. While the court does recognize the applicability of equitable estoppel in this action and, indeed, incompletely applies it to this case, it incorrectly decides the issue as a question of law. On the evidence in this record, this is clear error.

Upon equivocal evidence, equitable estoppel, or not, is a question of fact for the jury. L & H Transport, Inc. v. Drew Agency, Inc., 403 N.W.2d 223, 227 (Minn. 1987); Rhee v. Golden Home Builders, Inc., 617 N.W.2d 618, 622 (Minn. Ct. App. 2000). Of even more importance, Blue Bird's statute of limitations affirmative defense is also a question of fact for the jury. Ciardelli v. Rindal, 582 N.W.2d 910, 912 (Minn. 1998). The court concedes that Blue Bird attempted, and Oren permitted, additional, but failed, repairs until at least October 4, 2004. Ante at 10. Based upon this uncontradicted evidence, the court correctly states "Oren continued to believe Blue Bird *was* capable of eventually repairing the RV" and concluded that a genuine issue of fact existed as to "the date Oren knew or should have known Blue Bird was unable to maintain the RV as warranted"–i.e., the date that the defect could be cured by Blue Bird making the vehicle merchantable as impliedly warranted. Ante at 10. This is, of course, the stuff of detrimental reliance, an important and likely controlling element of equitable estoppel. Yet for purposes of a statute of limitations calculation on Oren's implied warranty, the court adopts July 2, 2004, a date untethered to any legally significant event in this transaction. Ante at 13. And, in doing so, without explanation, the court appears to lift Blue Bird's burden of proof on its affirmative limitations defense and effectively places it upon Oren. The court does this by requiring Oren to adduce direct (as opposed to circumstantial) evidence of his affirmative forbearance in commencing suit based upon Blue Bird's many failed efforts to make the RV merchantable.

Even so, and without regard to burdens of proof, factual questions abound on both issues–equitable estoppel and statute of limitations. For instance, as the court concedes, Oren permitted Blue Bird to complete additional repairs as late as October

-30-

4, 2004, which, according to the court "strongly suggest[ed] Oren continued to believe Blue Bird *was* capable of eventually repairing the RV." Ante at 10. This is, of course, full-blown evidence of reliance by Oren on Blue Bird's assurances. If anything, equitable estoppel interrupting the running of the statute of limitations could have been determined as a matter of law on this evidence alone. But, in November 2004, Blue Bird twice wrote to Oren, representing that it would "stand behind our commitment to provide [Oren] the best possible service" and that it "remain[ed] willing to work with [Oren] directly or through our distributor to assure [Oren] that the motor home conform[ed] to the warranty." Appellants' App. at 10-11. Thereafter, Oren alerted Blue Bird in a letter dated November 29, 2004, that the RV again would not start. Id. at 12-13. Then, Blue Bird responded on December 1, 2004, finally stating there was nothing wrong with the motor home and that Blue Bird had lived up to its obligations. Id. at 19. In response, on December 6, 2004, Oren, for the first time, raised the issue of litigation. Id. at 20. Clearly then, until late into November 2004, there are enough disputed facts to require presentation of the issues of equitable estoppel and the limitation defense to a jury. Even the earlier October 4 estoppel date would have been less than ten months prior to the expiration of a twelve-month statute of limitations.

There are also other fact issues in play in this litigation, given Blue Bird's reservation of its right to cure defects for a two-year period. This raises the possibility of estoppel by misrepresentation. Cf. Vesta State Bank v. Indep. State Bank of Minn., 518 N.W.2d 850, 855 & n.7 (Minn. 1994) (noting that statute of limitations begins to run only when the aggrieved party discovers the facts constituting fraud, and that this rule applies to causes of actions arising in transactions governed by the UCC due to the operation of § 336.2-725(4)).

Finally, the court does not address, and in fact, summarily rejects, Minnesota's estoppel-by-repair doctrine. Ante at 11 n.7. I concede that the Minnesota Supreme Court has never held that promises by a seller to make repairs give rise to estoppel or

a tolling of a statute of limitation. I predict, however, that available precedent establishes the viability of the doctrine in Minnesota.

In Colorado-Ute Electric Ass'n, Inc. v. Envirotech Corp., 524 F. Supp. 1152 (D. Colo. 1981), Buell furnished a precipitator for a power plant that failed its first performance test. This made it unmerchantable and in breach of an implied warranty of merchantability governed, like here, by the statute of limitations set forth in Minn. Stat. Ann. § 336.2-725(1). After the first failure, also like here, Buell repeatedly assured Colorado-Ute that it could and would remedy the unmerchantable performance. When Buell failed to cure, Colorado-Ute sued one year beyond the four-year statute of limitations, and Buell responded with a "tender of delivery" statute of limitations defense. The court rejected the defense and invoked the doctrine of tolling-by-repair saying "where the obligor agrees to perform its contract obligations within a reasonable period, [here two years under Blue Bird's express warranties] the statute of limitations does not begin to run until the efforts to perform are abandoned" and even if the repair work had not tolled the statute of limitations, Buell would be estopped from taking advantage of it. 524 F. Supp. at 1156. In an unpublished 1989 opinion of the Minnesota Court of Appeals, Deters v. Columbia Heights Motors, No. C7-89-931, 1989 W.L. 206569, at *2 (Minn. Ct. App. Oct. 10, 1989), the court stated "[u]nder the tolling by repair doctrine, a defendant's conduct in assuring the plaintiff that it could fix a complained-of defect and making continued efforts to cure that defect may operate to toll the limitations period. See Colorado-Ute Electric Association, Inc. v. Envirotech Corp., 524 F. Supp. 1152, 1155 (D. Colo. 1981)." In 1991, the Minnesota Court of Appeals held that promises to repair tolled a section 336.2-725(2) cause-of-action-accrual claim. Church of the Nativity of Our Lord v. Watpro, Inc., 474 N.W.2d 605, 611 (Minn. Ct. App. 1991).

Sohns v. Pederson, 354 N.W.2d 852 (Minn. Ct. App. 1984), involved an implied warranty claim which accrued upon delivery of a "Bobcat" skidloader. It was immediately clear that the Bobcat was defective and over a period of two years, the

dealer promised a new machine. The plaintiff brought an action eight months late absent estoppel. The Minnesota court held that the promises to replace the Bobcat tolled the running of the statute of limitations. Id. at 855. The failure to deliver a promised non-defective replacement and the failure to deliver promised repair services sufficient to cure a defect seem to be almost indistinguishable acts for purposes of tolling a statute of limitations.

Likewise, Lake Superior Center Auth. v. Hammel, Green & Abrahamson, Inc., 715 N.W.2d 458 (Minn. Ct. App. 2006), involved a real estate defect. Although the parties knew of the defect immediately, discovery for purposes of the statute of limitations did not occur until it was clear that cure of the defect was not possible, notwithstanding repeated attempts to do so. Id. at 473.

This Minnesota precedent convinces me that the estoppel-by-repair doctrine is alive and well in Minnesota in addition to the equitable estoppel doctrine already validated by the court. At the bottom line, estoppel, or not (under any of the three doctrines) presents a question of fact not susceptible to dismissal by the court as a matter of law through a motion for summary judgment.

## CONCLUSION

For any and all of the above-stated reasons, the district court's grant of summary judgment dismissing Oren's implied warranty of merchantability claims should be reversed. From the court's contrary conclusion, I dissent.

_____

# APPENDIX A



## Limited Warranty

Blue Bird Wanderlodge (Wanderlodge), a division of Blue Bird Body Company, warrants each Wanderlodge to the original purchaser to be free from defects in material and workmanship under normal use and service within the limits described below:

1.  For a period of (3) years or 36,000 miles, whichever occurs first, from date of delivery to the original purchaser, Wanderlodge® warrants the:
    a.  Chassis frame rails and cross members to be free from defects in structural integrity (breaking or cracking).
    b.  Body shell (those structural metal components welded or riveted together forming floor, sidewalls, roof, front and rear sections) to be free from defects in structural integrity (breaking or cracking) including rust-through.
    c.  Paint adhesion to the body shell (those structural components forming side walls, roof, front and rear sections). Paint failures caused by corrosive atmospheric conditions and road chemicals are specifically not covered.

2.  For a period of three (3) years from date of delivery to the original purchaser, Wanderlodge warrants the steer and drive axles (tag axle not included), excluding brakes and wheel ends.

3.  For a period of two (2) years from the date of delivery to the original purchaser warrants all other components installed by Blue Bird and Wanderlodge, except diesel engines, automatic transmissions, tires and batteries, which are warranted by their manufacturers.

For demonstrators, the delivery date to the dealer will be the warranty start date. Mileage accumulated by the factory or dealer apply to any warranty mileage limits stated above. This limited warranty applies to the original purchaser during the warranty period. A transfer request and fee are required within thirty (30) days of resale to transfer the warranty.

Wanderlodge's obligation covered in this limited warranty is limited to the repair or replacement of such parts as shall, under normal use and service, appear to have been defective in workmanship or material. Without restricting the generality of this limitation, loss of use, commercial loss, towing charges, lodging, telephone calls, inconvenience, and loss of time are specifically not covered. This warranty shall not apply to any parts or components which must be repaired or replaced during the warranty period as a result of what is, in the opinion of Wanderlodge, normal wear and/or deterioration in the course of normal operations and use, accident damage, misuse and/or abuse.

If distributors, dealers or customers have any vehicle modifications or equipment installations performed without the written approval of Wanderlodge to the extent the modifications or equipment installations adversely affect other vehicle components or performance, Wanderlodge shall not accept any product liability or claims under the terms of the limited warranty. These claims become the sole responsibility of the company performing the modifications and/or installations.

A.

-34-

ANY IMPLIED WARRANTIES, INCLUDING THOSE OF MERCHANTABILITY OR FITNESS, ARE LIMITED TO THE WARRANTY PERIOD OF THIS WRITTEN WARRANTY. WANDERLODGE SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM BREACH OF THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY. NO PERSON, INCLUDING SALESPEOPLE, DEALERS, SERVICE CENTERS, OR FACTORY REPRESENTATIVES OF WANDERLODGE, IS AUTHORIZED TO MAKE ANY REPRESENTATION OR WARRANTY CONCERNING WANDERLODGE PRODUCTS EXCEPT TO REFER TO THIS LIMITED WARRANTY.

Wanderlodge reserves the right to make changes in design and changes or improvements upon its products without imposing any obligations upon itself to install the same upon products therefore manufactured. Defects shall be repaired promptly after discovery of the defect and within the warranty period as stated herein. All claims for warranty adjustments must be received by Wanderlodge not later than 30 days after the repair date, and shall be channeled through an authorized Wanderlodge dealer or factory representative. Any suit alleging a breach of this limited warranty or any other alleged warranty must be filed within one year of breach.

All rights under this limited warranty shall be governed by the law of Georgia, U.S.A.

> **NOTE: This information was correct at time of printing. For any vendor changes made to equipment and/or manual after printing date refer to the actual vendor owner manual supplied with motor home.**

Wanderlodge®    /    One Wanderlodge Way    /    Fort Valley, Georgia 31030    /    (478) 825-2021